RICHARDS ET AL. *v.* JEFFERSON COUNTY,
ALABAMA, ET AL.

No. 95–386.   Argued March 26, 1996—Decided June 10, 1996

794

STEVENS, J., delivered the opinion for a unanimous Court.

*William J. Baxley* argued the cause for petitioners. With him on the briefs was *Joel E. Dillard.*

*William M. Slaughter* argued the cause for respondents. With him on the brief was *Richard H. Walston.**

JUSTICE STEVENS delivered the opinion of the Court.

In *Hansberry* v. *Lee,* 311 U. S. 32, 37 (1940), we held that it would violate the Due Process Clause of the Fourteenth Amendment to bind litigants to a judgment rendered in an earlier litigation to which they were not parties and in which they were not adequately represented. The decision of the Supreme Court of Alabama that we review today presents us with the same basic question in a somewhat different context.

I

Jason Richards and Fannie Hill (petitioners) are privately employed in Jefferson County, Alabama. In 1991 they filed a complaint in the Federal District Court challenging the validity of the occupation tax imposed by Jefferson County

---

*\*Richard Ruda* and *James I. Crowley* filed a brief for the National Association of Counties et al. as *amici curiae* urging affirmance.

Ordinance 1120, which had been adopted in 1987. That action was dismissed as barred by the Tax Injunction Act, 28 U. S. C. § 1341.[1] They then commenced this action in the Circuit Court of Jefferson County.

Petitioners represent a class of all nonfederal employees subject to the county's tax.[2] Petitioners alleged that the tax, which contains a lengthy list of exemptions, violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment and similar provisions of the Alabama Constitution. Because $10 million of the annual proceeds from the county tax have been pledged to the Birmingham-Jefferson Civic Center for a period of 20 years, the court permitted the center to intervene and support Jefferson County's defense of its tax.

The county moved for summary judgment on the ground that petitioners' claims were barred by a prior adjudication of the tax in an earlier action brought by the acting director of finance for the city of Birmingham and the city itself. That earlier action had been consolidated for trial with a separate suit brought by three county taxpayers, and the Supreme Court of Alabama upheld the tax in the resulting appeal. See *Bedingfield* v. *Jefferson County*, 527 So. 2d 1270 (1988). After examining the course of this prior litigation, the trial court granted the county's motion for summary judgment as to the state constitutional claims, but refused to do so as to the federal claims because they had not been decided by either the trial court or the Alabama Supreme Court in *Bedingfield*.

On appeal, the county argued that the federal claims as well as the state claims were barred by the adjudication in

---

[1] *Richards* v. *Jefferson County*, 789 F. Supp. 369 (ND Ala.), affirmance order, 983 F. 2d 237 (CA11 1992).

[2] They were joined in the action by George Dykes and Joan Dykes, employees of the Federal Government who also work in the county. The Dykes represent a separate class of federal employees whose claims are not before us.

*Bedingfield.* The Alabama Supreme Court agreed. The majority opinion noted that in Alabama, as in most States, a prior judgment on the merits rendered by a court of competent jurisdiction precludes the relitigation of a claim if there is a "substantial identity of the parties" and if the "same cause of action" is presented in both suits. 662 So. 2d 1127, 1128 (1995). Moreover, the court explained, the prior judgment is generally "'res judicata not only as to all matters litigated and decided by it, but as to all relevant issues which could have been but were not raised and litigated in the suit.'" *Ibid.* (quoting *Heiser* v. *Woodruff,* 327 U. S. 726, 735 (1946)).

The Alabama Supreme Court concluded that even though the opinion in *Bedingfield* did not mention any federal issue, the judgment in that case met these requirements. The court gave three reasons for this conclusion: (1) The complaints in the earlier case had alleged that the county tax violated the Equal Protection Clause of the Fourteenth Amendment and an equal protection issue had been argued in the appellate briefs, 662 So. 2d, at 1129; (2) the taxpayers in *Bedingfield* adequately represented petitioners because their respective interests were "essentially identical," 662 So. 2d, at 1130; and (3) in pledging tax revenues and issuing bonds in 1989, the county and the intervenor "could have relied on *Bedingfield* as authoritatively establishing that the county occupational tax was not unconstitutional for the reasons asserted by the *Bedingfield* plaintiffs," 662 So. 2d, at 1130.

Justice Maddox dissented. He agreed with the trial judge that no federal constitutional claim had been adjudicated in *Bedingfield.* 662 So. 2d, at 1130–1131. Moreover, he concluded that the mere fact that the theory advanced by the petitioners in this case could have been asserted in *Bedingfield* constituted an insufficient reason for barring this action. 662 So. 2d, at 1131–1132.

We now conclude that the State Supreme Court's holding that petitioners are bound by the adjudication in *Bedingfield* deprived them of the due process of law guaranteed by the Fourteenth Amendment.[3]

## II

State courts are generally free to develop their own rules for protecting against the relitigation of common issues or the piecemeal resolution of disputes. *Postal Telegraph Cable Co.* v. *Newport*, 247 U. S. 464, 475 (1918). We have long held, however, that extreme applications of the doctrine of res judicata may be inconsistent with a federal right that is "fundamental in character." *Id.*, at 476.[4]

---

[3] After granting the petition to consider both the equal protection challenge to the tax scheme, and the due process challenge to the Alabama Supreme Court's conclusion that their claims were barred by the doctrine of res judicata, we entered an order dismissing the writ to the extent that it included the equal protection question and directing the parties to address at oral argument only the question whether the application of res judicata afforded petitioners due process. 516 U. S. 983 (1996). Because petitioners raised their due process challenge to the application of res judicata in their application for rehearing to the Alabama Supreme Court, that federal issue has been preserved for our review. See *PruneYard Shopping Center* v. *Robins*, 447 U. S. 74, 85–87, n. 9 (1980).

[4] "The doctrine of *res judicata* rests at bottom upon the ground that the party to be affected, or some other with whom he is in privity, has litigated or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction. *Southern Pacific R. R. Co.* v. *United States*, 168 U. S. 1, 48; Greenleaf Ev., §§ 522–523. The opportunity to be heard is an essential requisite of due process of law in judicial proceedings. *Windsor* v. *McVeigh*, 93 U. S. 274, 277; *Louisville & Nashville R. R. Co.* v. *Schmidt*, 177 U. S. 230, 236; *Simon* v. *Craft*, 182 U. S. 427, 436. And as a State may not, consistently with the Fourteenth Amendment, enforce a judgment against a party named in the proceedings without a hearing or an opportunity to be heard (*Pennoyer* v. *Neff*, 95 U. S. 714, 733; *Scott* v. *McNeal*, 154 U. S. 34, 46; *Coe* v. *Armour Fertilizer Works*, 237 U. S. 413, 423), so it cannot, without disregarding the requirement of due process, give a conclusive effect to a prior judgment against one who is neither a party nor in privity with a party therein." 247 U. S., at 476.

The limits on a state court's power to develop estoppel rules reflect the general consensus " 'in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.' *Hansberry* v. *Lee*, 311 U. S. 32, 40 (1940). . . . This rule is part of our 'deep-rooted historic tradition that everyone should have his own day in court.' 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4449, p. 417 (1981)." *Martin* v. *Wilks*, 490 U. S. 755, 761–762 (1989). As a consequence, "[a] judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings." *Id.*, at 762; *Blonder-Tongue Laboratories, Inc.* v. *University of Ill. Foundation*, 402 U. S. 313, 329 (1971).

Of course, these principles do not always require one to have been a party to a judgment in order to be bound by it. Most notably, there is an exception when it can be said that there is "privity" between a party to the second case and a party who is bound by an earlier judgment. For example, a judgment that is binding on a guardian or trustee may also bind the ward or the beneficiaries of a trust. Moreover, although there are clearly constitutional limits on the "privity" exception, the term "privity" is now used to describe various relationships between litigants that would not have come within the traditional definition of that term. See generally Restatement (Second) of Judgments, ch. 4 (1980) (Parties and Other Persons Affected by Judgments).

In addition, as we explained in *Wilks:*

> "We have recognized an exception to the general rule when, in certain limited circumstances, a person, although not a party, has his interests adequately represented by someone with the same interests who is a party. See *Hansberry* v. *Lee*, 311 U. S. 32, 41–42 (1940)

('class' or 'representative' suits); Fed. Rule Civ. Proc. 23 (same); *Montana* v. *United States*, 440 U. S. 147, 154–155 (1979) (control of litigation on behalf of one of the parties in the litigation). Additionally, where a special remedial scheme exists expressly foreclosing successive litigation by nonlitigants, as for example in bankruptcy or probate, legal proceedings may terminate pre-existing rights if the scheme is otherwise consistent with due process. See *NLRB* v. *Bildisco & Bildisco*, 465 U. S. 513, 529–530, n. 10 (1984) ('[P]roof of claim must be presented to the Bankruptcy Court . . . or be lost'); *Tulsa Professional Collection Services, Inc.* v. *Pope*, 485 U. S. 478 (1988) (nonclaim statute terminating unsubmitted claims against the estate)." 490 U. S., at 762, n. 2.

Here, the Alabama Supreme Court concluded that res judicata applied because petitioners were adequately represented in the *Bedingfield* action. 662 So. 2d, at 1130. We now consider the propriety of that determination.

## III

We begin by noting that the parties to the *Bedingfield* case failed to provide petitioners with any notice that a suit was pending which would conclusively resolve their legal rights. That failure is troubling because, as we explained in *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U. S. 306 (1950), the right to be heard ensured by the guarantee of due process "has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Id.*, at 314; *Phillips Petroleum Co.* v. *Shutts*, 472 U. S. 797, 812 (1985); *Schroeder* v. *City of New York*, 371 U. S. 208, 212–213 (1962). Nevertheless, respondents ask us to excuse the lack of notice on the ground that petitioners, as the Alabama

Supreme Court concluded, were adequately represented in *Bedingfield*.[5]

Our answer is informed by our decision in *Hansberry* v. *Lee*, 311 U. S., at 40–41. There, certain property owners brought suit to enforce a restrictive covenant that purported to forbid the sale or lease of any property within a defined area to "any person of the colored race." *Id.*, at 37–38. By its terms the covenant was not effective unless signed by the owners of 95 per cent of frontage in the area. At trial, the defendants proved that the signers of the covenant owned only about 54 percent of the frontage. Nevertheless, the trial court held that the covenant was enforceable because the issue had been resolved in a prior suit in which the parties had stipulated that the owners of 95 percent had signed. *Id.*, at 38 (referring to *Burke* v. *Kleiman*, 277 Ill. App. 519 (1934)).

Despite the fact that the stipulation was untrue, the Illinois Supreme Court held that the second action was barred by res judicata. See *Lee* v. *Hansberry*, 372 Ill. 369, 24 N. E. 2d 37 (1939). Because the plaintiff in the earlier case had alleged that she was proceeding "on behalf of herself and on behalf of all other property owners in the district," *id.*, at 372, 24 N. E. 2d, at 39, the Illinois Supreme Court concluded that all members of that "class," including the defendants challenging the stipulation in the present action, were bound by the decree. We reversed.

We recognized the "familiar doctrine . . . that members of a class not present as parties to the litigation may be bound by the judgment where they are in fact adequately repre-

---

[5] Of course, mere notice may not suffice to preserve one's right to be heard in a case such as the one before us. The general rule is that "[t]he law does not impose upon any person absolutely entitled to a hearing the burden of voluntary intervention in a suit to which he is a stranger." *Chase Nat. Bank* v. *Norwalk*, 291 U. S. 431, 441 (1934); but cf. *Penn-Central Merger and N & W Inclusion Cases*, 389 U. S. 486, 505, n. 4 (1968) (noting that absent parties were invited to intervene by the court).

sented by parties who are present, or . . . the relationship between the parties present and those who are absent is such as legally to entitle the former to stand in judgment for the latter." *Hansberry*, 311 U. S., at 42–43. We concluded, however, that because the interests of those class members who had been a party to the prior litigation were in conflict with the absent members who were the defendants in the subsequent action, the doctrine of representation of absent parties in a class suit could not support the decree.

Even assuming that our opinion in *Hansberry* may be read to leave open the possibility that in some class suits adequate representation might cure a lack of notice, but cf., *id.*, at 40; *Eisen* v. *Carlisle & Jacquelin*, 417 U. S. 156, 177 (1974); *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U. S., at 319, it may not be read to permit the application of res judicata here. Our opinion explained that a prior proceeding, to have binding effect on absent parties, would at least have to be "so devised and applied as to insure that those present are of the same class as those absent and that the litigation is so conducted as to insure the full and fair consideration of the common issue." 311 U. S., at 43; cf. *Phillips Petroleum Co.* v. *Shutts*, 472 U. S., at 811–812. It is plain that the *Bedingfield* action, like the prior proceeding in *Hansberry* itself, does not fit such a description.

The Alabama Supreme Court concluded that the "*taxpayers* in the *Bedingfield* action adequately represented the interests of the taxpayers here," 662 So. 2d, at 1130 (emphasis added), but the three county taxpayers who were parties in *Bedingfield* did not sue on behalf of a class; their pleadings did not purport to assert any claim against or on behalf of any nonparties; and the judgment they received did not purport to bind any county taxpayers who were nonparties. That the acting director of finance for the city of Birmingham also sued in his capacity as both an individual taxpayer and a public official does not change the analysis. Even if we were to assume, as the Alabama Supreme Court did not, that

by suing in his official capacity, the finance director intended to represent the pecuniary interests of all city taxpayers, and not simply the corporate interests of the city itself, he did not purport to represent the pecuniary interests of *county* taxpayers like petitioners.[6]

As a result, there is no reason to suppose that the *Bedingfield* court took care to protect the interests of petitioners in the manner suggested in *Hansberry*. Nor is there any reason to suppose that the individual taxpayers in *Bedingfield* understood their suit to be on behalf of absent county taxpayers. Thus, to contend that the plaintiffs in *Bedingfield* somehow represented petitioners, let alone represented them in a constitutionally adequate manner, would be "to attribute to them a power that it cannot be said that they had assumed to exercise." *Hansberry*, 311 U. S., at 46.

Because petitioners and the *Bedingfield* litigants are best described as mere "strangers" to one another, *Martin* v. *Wilks*, 490 U. S., at 762, we are unable to conclude that the *Bedingfield* plaintiffs provided representation sufficient to make up for the fact that petitioners neither participated in, see *Montana* v. *United States*, 440 U. S. 147, 154 (1979), nor had the opportunity to participate in, the *Bedingfield* action. Accordingly, due process prevents the former from being bound by the latter's judgment.

## IV

Respondents contend that, even if petitioners did not receive the kind of opportunity to make their case in court that due process would ordinarily ensure, the character of their

---

[6] We need not decide here whether public officials are always constitutionally adequate representatives of all persons over whom they have jurisdiction when, as here, the underlying right is personal in nature. Cf. *Lockport* v. *Citizens for Community Action at Local Level, Inc.*, 430 U. S. 259, 263, n. 7 (1977) (voting rights challenge by county residents not barred by county's prior suit); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4458, p. 518 (1981); *infra*, at 803–805.

action renders the usual constitutional protections inapplicable. They contend that invalidation of the occupation tax would have disastrous consequences on the county, which has made substantial commitments of tax revenues based on its understanding that *Bedingfield* determined the constitutionality of the tax. Respondents argue that in cases raising a public issue of this kind, the people may properly be regarded as the real party in interest and thus that petitioners received all the process they were due in the *Bedingfield* action.

Our answer requires us to distinguish between two types of actions brought by taxpayers. In one category are cases in which the taxpayer is using that status to entitle him to complain about an alleged misuse of public funds, see, *e. g.*, *Massachusetts* v. *Mellon*, 262 U. S. 447, 486–489 (1923), or about other public action that has only an indirect impact on his interests, *e. g.*, *Stromberg* v. *Board of Ed. of Bratenahl*, 64 Ohio St. 2d 98, 413 N. E. 2d 1184 (1980), *Tallassee* v. *State ex rel. Brunson*, 206 Ala. 169, 89 So. 514 (1921). As to this category of cases, we may assume that the States have wide latitude to establish procedures not only to limit the number of judicial proceedings that may be entertained but also to determine whether to accord a taxpayer any standing at all.

Because the guarantee of due process is not a mere form, however, there obviously exists another category of taxpayer cases in which the State may not deprive individual litigants of their own day in court. By virtue of presenting a federal constitutional challenge to a State's attempt to levy personal funds, petitioners clearly bring an action of this latter type. Cf. *ibid.* (distinguishing between "public" and "private" actions). Indeed, we have previously struck down as a violation of due process a state court's decision denying an individual taxpayer any practicable opportunity to contest a tax on federal constitutional grounds. See *Brinkerhoff-Faris Trust & Sav. Co.* v. *Hill*, 281 U. S. 673 (1930). There, we explained:

> "We are not now concerned with the rights of the plaintiff on the merits, although it may be observed that the plaintiff's claim is one arising under the Federal Constitution and, consequently, one on which the opinion of the state court is not final . . . . Our present concern is solely with the question whether the plaintiff has been accorded due process in the primary sense,—whether it has had an opportunity to present its case and be heard in its support. . . . [W]hile it is for the state courts to determine the adjective as well as the substantive law of the State, they must, in so doing, accord the parties due process of law. Whether acting through its judiciary or through its legislature, a State may not deprive a person of all existing remedies for the enforcement of a right, which the State has no power to destroy, unless there is, or was, afforded to him some real opportunity to protect it." *Id.,* at 681–682.

In any event, the Alabama Supreme Court did not hold here that petitioners' suit was of a kind that, under state law, could be brought only on behalf of the public at large. Cf. *Corprew* v. *Tallapoosa County,* 241 Ala. 492, 3 So. 2d 53 (1941) (discussing state statutory quo warranto proceedings). To conclude that the suit may nevertheless be barred by the prior action in *Bedingfield* would thus be to deprive petitioners of their "chose in action," which we have held to be a protected property interest in its own right. See *Logan* v. *Zimmerman Brush Co.,* 455 U. S. 422, 429–430 (1982); *Phillips Petroleum Co.* v. *Shutts,* 472 U. S., at 812 (relying on *Mullane* v. *Central Hanover Bank & Trust Co.,* 339 U. S. 306 (1950)); *Hansberry* v. *Lee,* 311 U. S., at 37. Thus, we are not persuaded that the nature of petitioners' action permits us to deviate from the traditional rule that an extreme application of state-law res judicata principles violates the Federal Constitution.

Of course, we are aware that governmental and private entities have substantial interests in the prompt and deter-

minative resolution of challenges to important legislation. We do not agree with the Alabama Supreme Court, however, that, given the amount of money at stake, respondents were entitled to rely on the assumption that the *Bedingfield* action "authoritatively establish[ed]" the constitutionality of the tax. 662 So. 2d, at 1130. A state court's freedom to rely on prior precedent in rejecting a litigant's claims does not afford it similar freedom to bind a litigant to a prior judgment to which he was not a party. That general rule clearly applies when a taxpayer seeks a hearing to prevent the State from subjecting him to a levy in violation of the Federal Constitution.

## V

Because petitioners received neither notice of, nor sufficient representation in, the *Bedingfield* litigation, that adjudication, as a matter of federal due process, may not bind them and thus cannot bar them from challenging an allegedly unconstitutional deprivation of their property. Accordingly, the judgment of the Alabama Supreme Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion.

*It is so ordered.*