BUTTS, Justice
(dissenting).
I respectfully dissent from the majority’s denial of the petition for a writ of mandamus filed by Jefferson County, the Birmingham-Jefferson Civic Center Authority, and Randy Godeke, director of revenue for Jefferson County, who are the defendants in a lawsuit pending in the Jefferson Circuit Court. The lawsuit is a class action in which the plaintiffs challenge the constitutionality of an occupational tax levied by Jefferson County on all persons who earn wages in Jefferson County and who are not otherwise required to pay a business license tax. The plaintiffs seek a $300 million refund of what they claim has been an unlawfully collected tax. I would grant the mandamus petition and order the trial court to decertify this Rule 23(b)(2), Ala. R. Civ. P., class action and require the class plaintiffs to proceed on their individual claims or else seek certification of a class under Rule 23(b)(3), under which the class plaintiffs must pay for the required individual notice to absent class members.
I.
This case has been before this Court previously. The basic facts and procedural history were explained in our opinion in Jefferson *909 County v. Richards, 662 So.2d 1127, 1127-28 (Ala.1995):
“This appeal by permission is from the denial of a summary judgment in a declaratory judgment action brought on behalf of two classes of taxpayers against Jefferson County. The taxpayers sought to have Act 406, 1967 Ala. Acts, and Jefferson County Ordinance 1120, adopted in 1987, declared unconstitutional. Act 406 authorizes the Jefferson County Commission to levy a county occupational tax on all persons who earn wages in the County and who are not required to pay the state business license tax. Ordinance 1120 levies the county occupational tax at the rate of .005 (1/2 of 1%) on all eligible income earned in the county, exempting persons who pay the state business license tax and domestic servants employed in private homes. The complaint was filed by two classes of taxpayers: the ‘Foley-Dykes’ class, which represents all Federal employees subject to the tax, and the ‘Richards-Hill’ class, which represents all non-Federal employees subject to the tax. The complaint alleges that Act 406 and Ordinance 1120 violate the equal protection and due process provisions of the Federal and State constitutions, and, with regard to the class of Federal employees only, the Buck Act, 4 U.S.C. § 111 et seq. The plaintiffs allege that the Act and the ordinance are made unconstitutional by what they call the arbitrary and irrational character of the exemptions. The Birmingham-Jefferson Civic Center Authority (‘BJCC’) was allowed to intervene, asserting as its interest $10 million per year of occupational tax proceeds that have been pledged to the BJCC for a 20-year period to repay BJCC special tax bonds that are now outstanding in the principal amount of over $123 million.
“The County moved for a summary judgment, contending that all of the claims, except for the Federal employees’ Buck Act claim, are barred by the doctrine of res judicata, based on the action that was the subject of this Court’s opinion in Beddingfield[Bedingfield] v. Jefferson County, 527 So.2d 1270 (Ala.1988). The trial court entered a summary judgment for the County on all State constitutional claims, but denied the motion for summary judgment with regard to the Federal constitutional and statutory claims....”
In Richards, this Court reversed the judgment of the trial court, holding that the plaintiffs’ federal constitutional claims were barred by the doctrine of res judicata, based on the earlier Bedingfield action. The plaintiffs petitioned the United States Supreme Court for certiorari review of that ruling, and in Richards v. Jefferson County, 517 U.S. 793, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996), on remand, 682 So.2d 409 (Ala.1996) (vacating earlier judgment at 662 So.2d 1127), the Supreme Court ruled that this Court had erred in holding that Bedingfield had a res judicctr ta effect on the plaintiffs’ federal constitutional claims.
The action was remanded to the trial court, which certified it as a Rule 23(b)(2) class action, which only requires the class plaintiffs to provide notice of the lawsuit to potential class members by publication in a newspaper. The trial court stated that if the defendants believed individual notice of the class action to all potential class members was needed, they would have to bear the cost of such notice themselves. They determined that it would cost between $600,000 and $800,000 to provide individual notice to all class members, and they ultimately decided to file this mandamus petition challenging the trial court’s ruling rather than to bear the cost of giving individual notice at this time.
II.
The defendants make several compelling arguments as to why the trial court erred in certifying this action as a Rule 23(b)(2) class action. They argue that the plaintiffs have made a claim for predominantly money damages (reimbursement of $300 million in occupational taxes), and they say that if such a claim is to be brought as a class action, it must be brought as a Rule 23(b)(3) action, in which individual notice to all potential class members is required. The defendants also state that the law recognizes that the degree of notice to class members varies inversely to *910 the cohesiveness of the class, and they argue that conflicts of interest among the class members in this action mandate individual notice under Rule 23(b)(3). More specifically, the defendants argue:
“It is not difficult to recognize that the people, approximately one million in number, who have paid the occupational tax during the last nine years are naturally divided into several different classes with significantly conflicting interests with respect to the validity of the tax and the prospect of a refund. The County itself is one of the largest employers in Jefferson County, with 3,965 active employees [citation omitted], and of these employees, the overwhelming majority are subject to the occupational tax because they do not pay a separate professional license tax to the state. These employees have a direct personal interest in the economic viability of the County that is, by any reasonable standard, likely to be much greater than their interest in a refund of the occupational tax. With an estimated yield of $46 million budgeted for the current fiscal year, the occupational tax will provide $36,000,000 (after payment of $10,000,000 to the Authority for the Civic Center bonds) of the total general fund budget in the current fiscal year of $151,518,580. [Citation omitted.]
“The loss of this revenue, when coupled with an obligation to refund more than $300,000,000 in previously collected taxes, would completely destabilize county government in unpredictable ways. Many jobs would be lost, normal pay scales and raises would be curtailed, working conditions would be changed for employees who were fortunate enough to retain their jobs, and a pall of uncertainty would be cast over the job security of many county employees. The adverse effect of the loss of the occupational tax would extend to the spouses and relatives of County employees who work in Jefferson County for other employers, adding to the subclass of taxpayers whose interests favor the continuing imposition of the occupational tax, but who are included in the non-opt-out class erroneously certified by the trial judge in this case. The County also has more than 900 retired pensioners who may be included in this class because of wages earned in post-retirement jobs, but who have a larger economic interest in the financial health of the County because of its obligations under the pension plan, including the ability to fund periodic cost-of-living increases. The County employees and pensioners and their relatives clearly have economic interests with respect to the validity of the occupational tax and any possible refund thereof that are directly contrary to the interests of the named Plaintiffs in this action, but are powerless to opt-out of the litigation.
“If a refund is to constitute the remedy flowing from a determination that the occupational tax is unconstitutional, then it can be financed only by a massive debt to be incurred by the County and repaid by a new tax levied in substitution for the occupational tax.... Assuming a bond issue of $300 million with a retirement schedule of 30 years, an optimistic interest rate of 5.5%, and level semiannual debt service, the amortization of the tax refund would cost the County at least $18.3 million per year in debt service, including cumulative interest of more than $250 million. [Footnote omitted.]
“When the debt service burden of a refund is added to the burden of $46 million in lost revenue in order to keep county government in operation, it is apparent that a taxpayer who is entitled to a refund, but who continues to work in the County, is likely to experience a tax increase that, because of the interest expense of financing the refund, will be greater than the amount refunded to him. [Footnote omitted.] This will not be a concern for the numerous members of the class who, during the past nine years, paid the occupational tax in the County but who, as the result of a change in residence or occupation, no longer work in the County. There is a direct conflict between the class entitled to a refund who will not pay the future taxes levied to finance that refund and those entitled to a refund who, by reason of their continued employment in the County, will likely pay an additional tax burden greater than the value of their *911 refund. Those who answer to the latter description should have the benefit of personal notice of this action and the right to choose not to participate in the case.
“... Pretermitting the benefits of using the County’s roads to get to work and enjoying a workplace that is protected against crime, environmental hazard and other threats to civilization in an urban setting, a nonresident taxpayer might reasonably be interested in a refund of the occupational tax; without worrying about its adverse effect on the County. As the resident of another county, such taxpayer would be more inclined to overlook the disruption of county government than a resident taxpayer whose quality of life would be more adversely affected by the financial destabilization of the County and a decline in governmental services that it could provide_ A resident of the County subject to the occupational tax, when fully apprised of its indispensable role in the County’s affairs and the future tax burden involved in any refund of the tax, might rationally conclude that a refund made no economic sense and was inimical to good government. His real economic interests with respect to a refund are in material conflict with [those of] a nonresident taxpayer.”
Thus, the defendants contend that the potential conflict among class members is so great that due process requires the individual notice to class members that is a component of a Rule 23(b)(3) class action and that is not required under the current Rule 23(b)(2) certification.
In Adams v. Robertson, 676 So.2d 1265 (Ala.1995), cert. granted, 518 U.S. 1056, 117 S.Ct. 37, 135 L.Ed.2d 1128 (1996), cert. dismissed, 520 U.S. 83, 117 S.Ct. 1028, 137 L.Ed.2d 203 (1997), this Court noted the following distinctions regarding class actions under Rule 23(b)(2) and Rule 23(b)(3):
“A class action under Rule 23(b)(2) is permitted when the party opposed to the class has acted or refused to act on grounds applicable to the entire class. Generally, injunctive relief and declaratory relief are the remedies under this type of class action. An example would be where a person was accused of unlawful discrimination against an entire class of people.
“Rule 23(b)(3) allows class actions when there are common questions of law or fact among the class members and forming a class is superior to other methods of ending the legal dispute in a fair and efficient manner, e.g., when joinder of parties would be impracticable because of the large numbers of parties involved. Typically, the relief demanded is damages, and typical examples of a Rule 23(b)(3) class would be lawsuits involving consumer rights or antitrust violations. Typically, a Rule 23(b)(3) class is less cohesive than the other types of classes.
“We note that in a class action brought under Rule 23(b)(3), the members of the class are entitled to ‘opt out’ of the class action and pursue a separate lawsuit. See Rule 23(c). Class members in a Rule 23(b)(1) or 23(b)(2) lawsuit do not have the choice of opting out of the class action.”
676 So.2d at 1269-70.
The plaintiffs’ complaint and those facts set out here present an unusual instance where the action involves a blend of factors representative of both Rule 23(b)(2) and Rule 23(b)(3) class actions. The complaint seeks declaratory and injunctive relief, which is representative of Rule 23(b)(2) class actions. However, the complaint primarily seeks compensatory damages, a refund of the occupational tax each class member has paid to Jefferson County, in the approximate total amount of $300 million. Although the trial court’s certification of this action as a Rule 23(b)(2) class action indicates that the court found this action to be one primarily for declaratory and injunctive relief, I cannot agree.
The amount of compensatory damages sought in this class action is enormous, and I believe that that claim for relief overwhelms the claims for declaratory and injunctive relief, which are merely lesser components or steps necessary to recovery of the $300 million. Thus, this action is clearly one for compensatory damages, and the trial court erred in certifying it as a Rule 23(b)(2) class action. The majority has apparently ignored the defendants’ argument that there is a *912 great potential for conflicts of interest among the class members and that the class is not of the cohesive nature proper for Rule 23(b)(2) certification. However, I take judicial notice of the fact that the class certified is composed of employees of Jefferson County and other persons employed in Jefferson County but not by Jefferson County; of the fact that it includes retired former employees of Jefferson County; of the fact that it includes persons employed in Jefferson County who reside in Jefferson County and others who reside outside Jefferson County; and of the fact that it includes persons formerly employed in Jefferson County who reside in Jefferson County and others who reside outside Jefferson County. Given those facts, I think it obvious that the plaintiff class is not cohesive, that there is a great potential for conflicts of interest among class members as to whether the occupational tax should be refunded, and that the lack of cohesiveness of the class mandates that each class member be afforded individual notice and the right to opt out of the class. Accordingly, I believe the trial court abused its discretion in certifying the action as a Rule 23(b)(2) class.
A class certification may properly be challenged by a petition for a writ of mandamus, and I believe the defendants have shown a clear legal right to the relief they seek. Thus, I would grant the petition for the writ of mandamus and order the trial judge to vacate his order certifying the plaintiffs’ action as a Rule 23(b)(2) class action. Although the defendants have also asked this Court to order the trial court to recertify the action as a Rule 23(b)(3) class action, it is the plaintiffs’ decision whether to seek such certification.