*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0185p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

CRYSTAL LUDWIG,

        *Plaintiff-Appellant,*

    *v.*

TOWNSHIP OF VAN BUREN,

        *Defendant-Appellee.*

No. 10-1208

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 07-15317—Avern Cohn, District Judge.

Argued: September 27, 2011

Decided and Filed: June 20, 2012

Before: ROGERS, McKEAGUE, and DONALD, Circuit Judges.

_____

## COUNSEL

_____

**ARGUED:** Michael L. Donaldson, Plymouth, Michigan, for Appellant. Danielle C. Schoeny, SOMMERS SCHWARTZ, P.C. Southfield, Michigan, for Appellee. **ON BRIEF:** Timothy P. Murphy, Saint Clair Shores, Michigan, for Appellant. Henri O. Harmon, SOMMERS SCHWARTZ, P.C. Southfield, Michigan, for Appellee.

_____

## OPINION

_____

    ROGERS, Circuit Judge. Plaintiff Crystal Ludwig is an exotic dancer challenging the nudity ordinances of Van Buren Township under 42 U.S.C. § 1983. Ludwig works for Garter Belt, Inc., an entity that operates a strip club and is currently enjoined from violating the Van Buren nudity ordinances. This injunction was issued as part of a prior suit, in which Garter Belt unsuccessfully challenged the ordinances. In light of this previous suit, the district court dismissed Ludwig's action on res judicata

grounds, reasoning that Ludwig's interests had been "adequately represented" by Garter Belt in the previous suit. On appeal, Ludwig argues that the district court mistakenly relied on the concept of virtual representation, a broad application of res judicata that has been held by the Supreme Court to violate due process. Ludwig, however, is a dancer at Garter Belt and, as such, she is bound by the injunction. Given her status, she cannot now challenge the injunction on grounds already litigated.

Ludwig, an exotic dancer working for Garter Belt, brings this First Amendment challenge to Van Buren's nudity ordinances. Although this is Ludwig's first suit challenging the ordinances, two arguably related parties have already lost constitutional challenges to the same Van Buren ordinances. In 2000, Van Buren filed "*Garter Belt I*," seeking to compel Garter Belt to comply with the township's nudity ordinances. *Van Buren Twp. v. Garter Belt*, *Inc.*, No. 00-036479 (Wayne Co. Cir. Ct. 2000). Garter Belt removed the case to federal court, and then filed a separate federal suit asserting that the nudity ordinances were unconstitutional. *Garter Belt, Inc. v. Van Buren Twp.*, No. 00-75630 (E.D. Mich. 2000) ("*Garter Belt II.*") The two cases were consolidated. The court remanded *Garter Belt I* for lack of federal jurisdiction, and dismissed *Garter Belt II* on abstention grounds. *Van Buren Twp. v. Garter Belt*, *Inc.*, No. 00-75395 (E.D. Mich. Jan. 18, 2001), *aff'd Garter Belt, Inc. v. Van Buren Twp.*, 66 F. App'x 612 (6th Cir. 2003).

On remand, the state court in *Garter Belt I* entered a judgment and permanent injunction against Garter Belt, holding that the nudity ordinances were "without constitutional or legal infirmity." The injunction was upheld on appeal.

In 2002, Samantha Bates, an exotic dancer working for Garter Belt, filed a § 1983 action challenging the nudity ordinances and seeking money damages. *See Bates v. Van Buren Twp.*, 02-73692, 2005 WL 1769525 (E.D. Mich. July 25, 2005). The district court held that Bates's action was barred by res judicata and we affirmed. *Bates v.Van Buren Twp.*, 459 F.3d 731 (6th Cir. 2006).

Ludwig became an exotic dancer shortly after reaching the age of majority. At the time of *Garter Belt I* and *Bates*, she was not employed or associated with Garter Belt.

When Ludwig sued in 2007, Van Buren moved for summary judgment under the theory that *Garter Belt I* precluded the action. Van Buren argued that Ludwig's suit was indistinguishable from *Bates*, and should be dismissed on the same grounds. Ludwig argued that *Bates* was distinguishable because Ludwig was not yet employed as an exotic dancer when *Garter Belt I* was decided. Ludwig further argued that the dismissal of her case would violate due process.

The district court held that Michigan's res judicata doctrine barred Ludwig's claims. Noting that Michigan broadly construes res judicata under *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004), the district court applied the doctrine to bind parties "so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert." *Ludwig v. Twnship of Van Buren*, 681 F. Supp. 2d 848, 853 (2010). The district court held:

> Ludwig and the Garter Belt, like Bates and the Garter Belt, clearly have a substantial identity of interests: that the ordinance be struck down on constitutional grounds. Ludwig works at the same establishment which litigated the case in state court. Ludwig's interest was presented and protected by the Garter Belt before the Michigan courts.

*Id*. (internal quotations omitted). Because the Garter Belt had already lost its challenge to the nudity ordinances, the district court held that Ludwig's claim was barred.

In doing so, the district court determined that the application of res judicata did not deny Ludwig due process. Mindful of the Supreme Court's admonition that an "extreme" application of res judicata could violate due process, *see Richards v. Jefferson Cnty*., 517 U.S. 793, 797 (1996), the district court held that barring Ludwig's challenge to the ordinance—which was substantially identical to that raised by Garter Belt—was not an extreme application. Further, the district court held that a recent Supreme Court decision, *Taylor v. Sturgell*, 553 U.S. 880 (2008), did not change that conclusion. While *Taylor* "rejected the theory of virtual representation to establish privity for res judicata purposes," the district court held that the case was inapplicable to cases applying state preclusion rules. *Ludwig*, 681 F. Supp. 2d at 853. The district court granted summary judgment and Ludwig appeals.

Our analysis of Ludwig's appeal proceeds in two steps. First, we must determine if Michigan law precludes Ludwig's appeal because "federal courts are required to give the judgments of state courts the same preclusive effect as they are entitled to under the laws of the state rendering the decision." *Executive Arts Studio v. City of Grand Rapids*, 391 F.3d 783, 795 (6th Cir. 2004). Second, we must determine if the application of Michigan law constitutes an "extreme application[] of the doctrine of res judicata . . . inconsistent with a federal right that is fundamental in character." *Richards v. Jefferson Cnty.*, 517 U.S. 793, 797 (1996). Neither step requires reversal in this case. Ludwig's appeal is precluded under Michigan law, which is not an extreme application that violates the Constitution.

Michigan courts would bar Ludwig's action under the principles articulated in *Adair v. State*, 680 N.W.2d 386 (Mich. 2004). In Michigan, res judicata "bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Id*. at 396. Michigan "has taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.* It is undisputed that the prior action—between Van Buren and Garter Belt—was adjudicated on the merits and resolved the substantive dispute of the validity of the Van Buren ordinances. The sole remaining question is whether both actions involve the same parties or their privies. They do because Ludwig works only for Garter Belt, and in that capacity she is subject to injunctions against the company.

Ludwig's suit is effectively a challenge to a permanent injunction levied against her place of business, Garter Belt. According to her complaint, she is "at all times pertinent . . . an expressive dancer at Garter Belt."[1] Although ordinarily an employee

---

[1]The complaint also states that she "is an independent contractor renting space for the purpose of exhibiting her art." For purposes of the following claim preclusion analysis, there is no difference between an employment relationship and one of an "independent contractor renting space" in a place of entertainment.

is not bound by litigation brought by an employer, *see, e.g., United States v. Gurley*, 43 F.3d 1188, 1198 (8th Cir. 1994), a special problem arises when an employer is subject to prospective relief. *See* 18A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure §4460 (2d ed. 2011). This is because an employer can only act through its employees, so prospective relief must bind employees to have any effect. Upon entering her contractual relationship with Garter Belt, Ludwig was bound by the injunction issued in *Garter Belt I* to the extent she seeks to dance at Garter Belt.

It is clear that Michigan's doctrine of claim preclusion would preclude Garter Belt from challenging the injunction on grounds already litigated. In *Garter Belt I*, the Wayne County Circuit Court entered a Judgment and Permanent Injunction against Garter Belt, stating in part that the Nudity on Licensed Premises ordinance "is without constitutional or legal infirmity," and dismissed Garter Belt's counterclaims. Garter Belt remains subject to the injunction, and is barred from challenging it.

For purposes of her dancing at the club operated by Garter Belt, Ludwig became bound by *Garter Belt I* when she accepted her employment-like contractual arrangement with a corporation that was bound by a permanent injunction. Her suit seeks the right to do at the club operated by Garter Belt what Garter Belt is enjoined from permitting her to do. In Michigan, an injunction is binding on the parties to the action, their officers, agents, servants, and employees. Mich. Ct. R. 3.310(C)(4). A corollary of this rule is that a former employee is no longer bound by the injunction, and is free to act for herself in the protection of her own rights, even if the employer was prohibited from doing so. *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832–33 (2d Cir. 1930) (Hand, J.). Here, once Ludwig knew of the injunction, she was bound by its terms such that she cannot assist the Garter Belt in violating them. *See id.* Were Ludwig to quit her job, or start working at an adult establishment not subject to an injunction, the case would be different. She has not alleged such an intention. If she sued to dance elsewhere, the City would have to defend the suit, without reliance on claim preclusion from prior litigation with another party. But where the complaint raises only the same issues and seeks the same result finally litigated by her current employer, as to her actions for that employer,

the other party to the earlier litigation (here the City) should not have to defend against repetitive actions.

Such a result under Michigan law is not unconstitutional. If a party litigates against a corporation, and obtains injunctive relief, claim preclusion should protect the party against future litigation raising the same issue and seeking the same result. This should apply even where the litigation is brought by a newly hired employee of the corporation. Otherwise, those who litigate against corporations have effectively lost altogether the finality interest that the claim-preclusion doctrine protects. For instance, should a property owner win an injunction against a polluting manufacturer, she would have to defend her victory against the repeated suits for declaratory judgment brought by the polluter's new employees. A copyright or trademark owner who had litigated successfully against a publisher could be subjected to repetitive litigation by new employees of the publisher. It is a state's prerogative to protect against such wasteful and burdensome litigation, and a state may do so by means of a claim preclusion doctrine that prohibits current employees from relitigating issues already lost by their employers.

The Supreme Court did not mandate a contrary anomalous conclusion by invalidating in *Taylor v. Sturgell*, 553 U.S. 880, 893–95 (2008), an extreme form of claim preclusion in which the current litigant had no legal relationship with the prior litigant. In *Taylor*, the Supreme Court held that claim preclusion doctrines could not go so far as to preclude litigation where the Government in a Freedom of Information Act suit had prevailed in a previous suit brought by a friend of the plaintiff. The two men had "no legal relationship." The Supreme Court in this context rejected a doctrine of "virtual representation" based on a "diffuse balancing" of "equitable" factors, *id.* at 898, and based in particular on "adequate representation" shown merely by the previous litigant's "strong incentive to litigate" and the use of the same lawyers, *id.* at 897. The Supreme Court however preserved the constitutionality of federal common-law claim preclusion as to non-parties in the previous litigation in the context of six discrete "categories" with limited application. *Id.* at 893-95. These are where (1) a person

agrees to be bound by determination of issues in an action between others; (2) there is a pre-existing substantive legal relationship between the person to be bound and a party to judgment, for instance  preceding and succeeding property owners, bailee and bailor, or assignee and assignor; (3) the nonparty was adequately represented by someone with the same interests who was a party, as in a properly conducted class action or suit brought by trustee, guardian or other fiduciary; (4) the nonparty assumed control over the prior litigation; (5) the nonparty served as proxy for a party; and (6) a special statutory scheme expressly foreclosed successive litigation by nonlitigants. *Id.* While a corporate employer's relationship may not precisely fit within one of these categories, the categories are not constitutionally rigid.  The *Taylor* Court made clear that the foregoing list was "meant only to provide a framework for our consideration of virtual representation, not to establish a definitive taxonomy." *Id.* at 893 n.6.  An enjoined corporation must effectively bind its future employees; otherwise those seeking an injunction cannot get full relief.  The relationship between a corporation against which an injunction is sought and its future employees who will be bound by the injunction falls extremely close to category (2 ) involving legal relationship, and in any event is fully as "discrete" and "limited" as that exception.  Applying claim preclusion does not suffer from the weaknesses identified by the Court in *Taylor*, and is not an instance of the standardless "virtual representation" condemned by that case.  On the other hand, rejection of claim preclusion in this context severely undermines the policies underlying claim preclusion.

        The district court's judgment is affirmed.