COLLOTON, Circuit Judge.
 

 In a previous lawsuit filed in 2011, Richard Elbert sued the City of Kansas City, Missouri, the Kansas City Board of Police Commissioners, and various Kansas City employees, including police officers, in federal court. Elbert brought several federal constitutional claims under
 
 42 U.S.C. § 1983
 
 , alleging violations of the First and Fourth Amendments, as incorporated against the States. He also alleged violations of state law, and sought the return of property under Federal Rule of Civil Procedure 64.
 

 Many of Elbert's claims were based on an episode at the Kansas City Apollo Country Club. Elbert was the manager of the club. The country club had been the subject of citizen complaints and investigations by the city. On December 10, 2011, Kansas City police officers executing a search warrant effected a no-knock forceful entry into the club.
 

 Elbert alleged that a group of Kansas City police officers-identified as John Doe defendants in his complaint-battered the front door of the establishment, threw a "flash bang grenade" through the partially shattered door, and entered the club with weapons drawn. He asserted that the John Does pointed weapons at his friends and associates, and demanded that they get down on the ground. According to Elbert, the officers placed him in restraints, and Detective Robert Gibbs questioned him, first at the scene and later at
 police headquarters. Among other claims, Elbert alleged that Detective Gibbs violated the Fourth Amendment by using excessive force and falsely arresting and imprisoning him.
 

 In March 2013, the district court
 
 [1]
 
 dismissed Elbert's First Amendment claims for failure to state a claim. The court also denied Elbert's motion for return of property, reasoning that Elbert had not availed himself of the post-deprivation remedy of replevin under Missouri law.
 

 The court allowed Elbert's Fourth Amendment claims to proceed and directed the parties to submit a scheduling order. The parties agreed that the deadline for Elbert to amend his pleadings would be October 31, 2014. Elbert then moved for leave to amend his pleadings on December 23, 2014, nearly two months after the deadline. In his proposed amended complaint, Elbert sought to substitute twenty-one named individual defendants, mostly Kansas City police officers, for the twenty-one John Doe defendants listed in his second amended complaint. The court denied Elbert's motion to amend as untimely.
 

 Before final judgment in the first action, Elbert filed the present suit in Missouri state court. He named as defendants several people, including Detective Gibbs and the Missouri Board of Police Commissioners, who were also defendants in the first lawsuit. Elbert also sued sixteen Kansas City police officers, all of whom he had unsuccessfully sought to substitute for the John Doe defendants in the first lawsuit. The defendants removed the case to federal court. Elbert's claims in this action, as in the first action, arise from the events occurring at the Apollo Country Club on December 10, 2011.
 

 Just over two weeks after the case was removed, the district court
 
 sua sponte
 
 dismissed Counts 1, 2, 3, 5, and 9 of Elbert's eight-count complaint. In Counts 1, 2, and 5 of the complaint, Elbert alleged that the Board of Police Commissioners had failed to train and properly supervise the defendant police officers, and had failed to establish proper policies. In Count 3, Elbert alleged that the police officers and other city officials had violated his right to freedom of assembly under the First Amendment by dispersing guests during the December 10 search. Finally, in Count 9, Elbert sought replevin from the police officers and other city officials. The district court reasoned that Elbert had brought the same claims in the first federal action, and the court had dismissed them for failure to state a claim, so they should be summarily dismissed in the second action. The court then stayed further proceedings pending resolution of motions for summary judgment on the remaining claims in the first action.
 

 On January 15, 2016, the district court granted summary judgment for the defendants on Elbert's remaining federal claims in the first action, and declined to exercise supplemental jurisdiction over his state claims. This court affirmed the judgment, including the district court's denial of leave to amend the second amended complaint.
 
 See
 

 Elbert v. City of Kansas City
 
 ,
 
 667 F. App'x 881
 
 , 882-83 (8th Cir. 2016) (per curiam).
 

 After entering final judgment in the first action, the district court dismissed all remaining counts in the second action-Counts 4, 6, 7, and 8-reasoning that they were barred under the doctrine of
 
 res judicata
 
 . In Count 8, Elbert alleged that Detective Gibbs, who was also a defendant
 in the first action, had negligently supervised the police officers in their execution of the search warrant on December 10, 2011. In Counts 4, 6, and 7, Elbert challenged the actions of the police officers who were identified as John Doe defendants in the first action but never added as parties in that case. In Count 4, Elbert alleged that several city employees, including the police officers, had violated his equal protection rights by interfering with his ability to host private parties. Count 6 alleged a state law conversion claim against all defendants. Count 7 asserted that several city employees, including the police officers, violated Elbert's due process rights.
 

 In dismissing these claims based on
 
 res judicata
 
 , the district court reasoned that they were "based on the same events" as the first federal action. The court recognized that several of Elbert's claims involved police officers who were not defendants in the first action, but concluded that these officers were in "privity" with the defendants in the first action. Elbert appeals the district court's dismissal of his claims.
 

 Under federal common law, the doctrine of
 
 res judicata
 
 , or claim preclusion, applies when "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action."
 
 Costner v. URS Consultants, Inc.
 
 ,
 
 153 F.3d 667
 
 , 673 (8th Cir. 1998). "[W]hether two claims are the same for res judicata purposes depends on whether the claims arise out of the same nucleus of operative fact or are based upon the same factual predicate."
 
 Murphy v. Jones
 
 ,
 
 877 F.2d 682
 
 , 684-85 (8th Cir. 1989). Under the doctrine of
 
 res judicata
 
 , "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."
 
 Allen v. McCurry
 
 ,
 
 449 U.S. 90
 
 , 94,
 
 101 S.Ct. 411
 
 ,
 
 66 L.Ed.2d 308
 
 (1980). The district court correctly ruled that
 
 res judicata
 
 bars Counts 1, 2, 5, and 8, because they involve claims against the same parties from the first action, and Elbert could have brought the new claims in the first action.
 

 In the remaining counts, Elbert brought claims arising from the same events at the country club, but against new defendants who were not parties to the first action. The new defendants are police officers whom Elbert attempted to add as defendants in the first case when he filed his untimely motion to amend the second amended complaint. The district court reasoned that these remaining counts were barred by
 
 res judicata
 
 because the new police officer defendants were in "privity" with other police officers who were defendants in the first action. Elbert disputes this conclusion.
 

 The term "privity" once referred to specific substantive legal relationships, but it has "come to be used more broadly, as a way to express the conclusion that nonparty preclusion is appropriate on any ground."
 
 Taylor v. Sturgell
 
 ,
 
 553 U.S. 880
 
 , 894 n.8,
 
 128 S.Ct. 2161
 
 ,
 
 171 L.Ed.2d 155
 
 (2008). "[T]he term 'privity' is now used to describe various relationships between litigants that would not have come within the traditional definition of that term."
 
 Richards v. Jefferson County
 
 ,
 
 517 U.S. 793
 
 , 798,
 
 116 S.Ct. 1761
 
 ,
 
 135 L.Ed.2d 76
 
 (1996). As Judge Goodrich wrote in
 
 Bruszewski v. United States
 
 ,
 
 181 F.2d 419
 
 (3d Cir. 1950), "privity" is "merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata."
 

 Id.
 

 at 423
 
 (concurring opinion).
 

 This court long ago recognized that claim preclusion is not limited to cases involving the same parties or parties who are in traditional "privity" with defendants in a first action. In
 
 Fowler v. Wolff
 
 ,
 
 479 F.2d 338
 
 (8th Cir. 1973) (per curiam), we affirmed the dismissal of a plaintiff's claims against two new defendants in a second action where "the relationship of [the two new defendants] to the parties sued in the [previous] action is so close that their addition cannot change the fact that this present action is repetitious and barred by res judicata."
 

 Id.
 

 at 340
 
 .
 
 Fowler
 
 involved a civil rights action against three Nebraska officials concerning a dispute over parole. After the first action was dismissed on the merits, the plaintiff brought a second action against two of the same defendants and two different Nebraska officials. Although the later action involved new individual defendants and a new claim that was not discussed by the district court in the previous action, this court concluded that claim preclusion applied.
 

 Id.
 

 Fowler applied
 
 Gambocz v. Yelencsics
 
 ,
 
 468 F.2d 837
 
 (3d Cir. 1972), where the Third Circuit ruled that claim preclusion barred a plaintiff, whose claim of civil conspiracy against one set of defendants in a first action was dismissed on the merits, from bringing a second action alleging the same conspiracy against additional defendants who were not parties to the first. Although the two sets of defendants were not in traditional "privity" with each other, the court in
 
 Gambocz
 
 reasoned that "the relationship of the additional parties to the second complaint was so close to parties to the first that the second complaint was merely a repetition of the first cause of action."
 
 Id
 
 . at 842.
 

 Because the new defendants in
 
 Fowler
 
 and
 
 Gambocz
 
 were not parties in the first action, their invocation of claim preclusion was "nonmutual." One leading commentator, after surveying the law in this area, concluded that the one "cogent argument in favor of nonmutual claim preclusion is that the party to be precluded should have joined his new adversary in the original litigation." 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
 
 Federal Practice and Procedure
 
 § 4464.1, at 702 (3d ed. 2017).
 

 Since
 
 Fowler
 
 , other circuits have followed this approach and concurred with Professor Cooper's observation that "[t]he best probable outcome" is a "limited rule" that permits nonmutual claim preclusion "if the new party can show good reasons why he should have been joined in the first action and the old party cannot show any good reasons to justify a second chance."
 

 Id.
 

 § 4464.1, at 709 ;
 
 see
 

 Mars Inc. v. Nippon Conlux Kabushiki-Kaisha
 
 ,
 
 58 F.3d 616
 
 , 620 (Fed. Cir. 1995) ;
 
 In re El San Juan Hotel Corp.
 
 ,
 
 841 F.2d 6
 
 , 10-11 (1st Cir. 1988). The First Circuit, summarizing the authorities, explained that "claim preclusion applies if the new defendant is 'closely related to a defendant from the original action-who was not named in the previous law suit,' not merely when the two defendants are in privity."
 
 Airframe Sys., Inc. v. Raytheon Co.
 
 ,
 
 601 F.3d 9
 
 , 17 (1st Cir. 2010) (quoting
 
 Negron-Fuentes v. UPS Supply Chain Sols.
 
 ,
 
 532 F.3d 1
 
 , 10 (1st Cir. 2008) ). These decisions reject the "contention that nonparty defendants to an initial action can invoke claim preclusion as a defense in a later suit only if they can show that the nonparty defendant was in privity with the initial defendant."
 

 Id.
 

 The rationale of
 
 Fowler
 
 and comparable decisions from other circuits supports the district court's application of claim preclusion here. Elbert unsuccessfully brought First and Fourth Amendment claims against Detective Gibbs in his first action based on the police raid of the country club on December 10, 2011. He now seeks to bring two new constitutional claims, under
 the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment, and a new state law claim alleging conversion, against Gibbs and the officers whom he asserts were co-perpetrators with Gibbs, all based on the same police raid on December 10, 2011.
 

 There is no good reason why Elbert should have a second chance to add these claims and defendants. All of his claims arise out of the same police raid, and all of his new claims allege that Detective Gibbs, the defendant in the first action, and the sixteen police officers added in the second, acted together to violate his rights. Elbert could have brought the new claims against Gibbs in the first action and failed to do so. He could have joined the other police officers as defendants in the first action but failed to do so in a timely manner. As the district court explained, allowing Elbert to circumvent the district court's ruling on his untimely motion for leave to amend in the first action by bringing a second action against the new defendants would unreasonably burden the parties and the court: The "defendants, and [the district] court and staff expended an inordinate amount of judicial resources over a period of five years in the litigation of the prior action." R. Doc. 13, at 6. We uphold the district court's decision, because "[a]ny other rule would enable plaintiff to avoid the doctrine of res judicata by the simple expedient of not naming all possible defendants in [his] first action."
 
 Ruple v. City of Vermillion
 
 ,
 
 714 F.2d 860
 
 , 862 (8th Cir. 1983) (applying South Dakota law).
 

 To be sure,
 
 Taylor v. Sturgell
 
 rejected claim preclusion against a nonparty plaintiff based on a notion that the nonparty received "virtual representation" by a different plaintiff in a first action. But
 
 Taylor
 
 involved different considerations than this case. A plaintiff who was not a party to a first action "generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit."
 
 553 U.S. at 892
 
 ,
 
 128 S.Ct. 2161
 
 . Elbert, of course, was a party and had ample opportunity to litigate his claims against Gibbs and the sixteen police officers in his first action; he simply failed to do so. The question here is not whether Elbert is entitled to the time-honored tradition of "his own day in court,"
 
 id
 
 . at 893,
 
 128 S.Ct. 2161
 
 (quoting
 
 Richards
 
 ,
 
 517 U.S. at 798
 
 ,
 
 116 S.Ct. 1761
 
 ), but whether he gets "a second bite at the apple."
 
 Lubrizol Corp. v. Exxon Corp.
 
 ,
 
 871 F.2d 1279
 
 , 1288 (5th Cir. 1989) (citing
 
 Gambocz
 
 ).
 

 The judgment of the district court is affirmed.
 

 The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.