CHARLES R. JONES, Chief Judge.
|¶ The Appellant, John Paul Sapir, LLC, seeks review of the judgment of the district court granting the motion for summary judgment filed by the Appellee, Taco Bell America, Inc. Finding that the district court did not err in granting the motion for summary judgment, we affirm the judgment of the district court.
On January 22, 1991, the predecessor of John Paul Sapir, LLC, Eddie L. Sapir Inter Vivos Trust # 1 (“Trust”), and Taco Bell entered into a Ground Lease Agreement (“the Lease”) in which Judge Eddie Sapir (“Judge Sapir”) negotiated and executed the Lease agreement at issue. The Lease granted Taco Bell the right to use a piece of land near the corner of Tulane Avenue and Broad Street (“the Sapir Property”) in New Orleans. The right of use was specifically for the “ease of traffic flow and additional parking for the convenience of “Tenant’s” customers patronizing Taco Bell Restaurant #2337, located at 2639 Tulane Avenue, New Orleans, Louisiana.” Judge Sapir, acting as the manager of the Sapir Property, negotiated the Lease agreement for the Trust before the entity John Paul Sapir, LLC, was created.
Taco Bell previously operated a Taco Bell restaurant adjacent to the Sapir Property. Subsequent to the Lease agreement between the parties, Taco Bell | ¡.utilized the Sapir Property for additional parking for restaurant customers, and for more efficient traffic flow to and from the restaurant. It is important to note that no part of the actual Taco Bell restaurant was located on the Sapir Property; rather, the Sapir Property consisted of part of a driveway and parking spaces that allowed egress from the restaurant to Broad Street.
In August 2005, as a result of Hurricane Katrina, Taco Bell’s restaurant was severely damaged. For business reasons, Taco Bell elected not to reopen its restaurant, and on November 22, 2005, notified the Trust of its intention to terminate the Lease agreement for the Sapir Property. Shortly thereafter, the Trust filed suit (the “Sapir Trust Suit”) against Taco Bell seeking to enforce the Lease, and continue to have Taco Bell make rental payments according to the Lease. During the pen-dency of the Sapir Trust Suit, the Sapir Property was transferred from the Trust to the Appellant, John Paul Sapir, LLC. On or about October 29, 2008, the claims of the Sapir Trust Suit were settled. As part of the settlement, Taco Bell agreed to make all past due rental payments current, and also that the Lease agreement would remain valid and in effect. The Appellant asserts that it was its understanding that after this settlement, Taco Bell would make efforts to reopen a Taco Bell restaurant pursuant to the Lease. In March 2009, Taco Bell assigned its rights to the Lease to 2645 Tulane, LLC. (“Tulane”) for $1. Tulane has never reopened a Taco Bell restaurant adjacent to the Sapir Property, and Tulane is currently using the Sapir Property as a parking lot.
|3On August 21, 2009, the Appellant filed its Petition for Breach of Contract against Taco Bell, Phil Stein[1], and Tulane. The Appellant thereafter filed an Amended Petition for Breach of Contract against Taco Bell and Tulane. The Petition stated that *649 all defendants were in breach of the Lease for reasons which include, but are not limited to, failure to operate a Taco Bell restaurant on the Sapir Property subject to the Lease, even after the Sapir Property was assigned to John Paul Sapir, LLC. The dispute centered upon whether the Lease agreement between the Appellant and Taco Bell required the operation of a Taco Bell restaurant and only a Taco Bell restaurant on the Sapir Property. The Lease does not contain any specific provision that authorizes the operation of a certain type of business at that location.
Pursuant to the Appellant’s suit, Taco Bell filed a Motion for Summary Judgment arguing that neither Taco Bell nor its as-signee were in breach of the Lease. After hearing and weighing the testimony and evidence presented pertaining to Taco Bell’s Motion for Summary Judgment, the district court found that the Appellant failed to present evidence that genuine issues of material facts exist. The district court reasoned that it did not find any provisions in the contract between the parties to support the Appellant’s argument that Taco Bell breached the Lease agreement. The district court stated specifically “there’s nothing in there [Lease] in my mind [that] requires there to be a Taco Bell there.” Thus, the district court granted the Motion for Summary Judgment, dismissed all claims against Taco Bell with prejudice, and continued the trial without a date.
This timely appeal follows, and the Appellant raises two (2) assignments of error on appeal:
|41. The district court erred by granting Taco Bell’s Motion for Summary Judgment when the only testimony concerning the intent of the parties in confecting the Lease stated that only a Taco Bell restaurant was contemplated; and
2. The district court erred by granting Taco Bell’s Motion for Summary Judgment when the clear terms of the Lease limit the use of the Sapir Property for the operation of a Taco Bell restaurant.
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Samaha v. Rau, 2007-1726, p. 3 (La.2/26/08), 977 So.2d 880, 882. Appellate courts review a grant of summary judgment de novo using the same criteria applied by the lower court to determine if summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991). Summary judgment shall be grant ed “if the pleadings, depositions, answer to interrogatories and admissions on file, together with the affidavit, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B)(2). This article provides that “[t]he summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action.... The procedure is favored and shall be construed to accomplish these ends.” La. C.C.P. art. 966(A)(2). La. C.C.P. art. 966(C)(2) sets forth the burden of proof in summary judgment proceedings, providing:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse | ¿party’s claim, *650 action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he ■will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
This provision initially places the burden of producing evidence at the hearing on the motion for summary judgment on the mover, who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent’s case. Schultz v. Guoth, 2010-0343, p. 6 (La.1/19/11), 57 So.3d 1002, 1006. “At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial.... Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion.” Id. at pp. 6-7, 57 So.3d at 1006 (quoting Wright v. Louisiana Power & Light, 2006-1181, p. 16 (La.3/9/07), 951 So.2d 1058,1069-70).
The Appellant, at trial, argued that this matter is about a factual dispute concerning the intent behind the terms of the Lease agreement. The Appellant argued that its intent during the execution of the contract was for Taco Bell to use the Sapir Property exclusively as additional parking lot for Taco Bell’s patrons; therefore, Taco Bell breached the terms of the Lease agreement when it transferred all of its interest in the Sapir Property to Tulane. They further argue that though Tulane is operating a parking lot on the premises, and has paid on time the monthly rental payments to the Appellant, Taco Bell still breached the Lease agreement because the operations of Tulane are not in accordance with the Appellant’s intent.
|fiThe Appellant argued that its representative, Judge Sapir, an elected official at the time of the execution of the Lease agreement, negotiated the terms of the contract, and the specific use of the Sapir Property as an additional parking lot to be operated by Taco Bell only. They argue that the Trust’s intent was not for Taco Bell or any assignee of Taco Bell to use the Sapir Property to operate any other form of business; thus, Judge Sapir restricted the use of the Sapir Property to a Taco Bell restaurant so it could not be used for some type of business he did not agree with or he would potentially have conflicts with in the future.
In support of its argument, the Appellant cited several portions of the Lease agreement which refers to Taco Bell’s use of the Sapir Property for additional parking space for its patrons. The Appellant argued that these specific references in the Lease agreement stating specifically the use of the Sapir Property and Taco Bell’s use of the Sapir Property, showed its intent behind the Lease agreement; therefore, Taco Bell was in breach of the Lease agreement by selling its rights and obligations in the Sapir Property to Tulane.
Taco Bell, in its motion for summary judgment, contended that no genuine issue of material fact existed, and as such, a motion for summary judgment was warranted. Specifically, it claimed that the Lease agreement held between the parties did not provide any direct provisions requiring Taco Bell to operate a restaurant on the land adjacent to the Sapir Property at issue. They argue that this was important because Taco Bell has not reopened its restaurant at the said location since 2005. Further, the Lease agreement allowed Taco Bell to reassign its rights and obligations under the Lease agreement, so *651 long as the monthly rental payments were paid accordingly. The Lease agreement stated in pertinent part:
^Section 14 — USE OF DEMISED PREMISES — Tenant may use the Real Property for the purpose of constructing a parking lot and for providing customers with a more convenient and efficient traffic flow for the benefit of Tenant’s Taco Bell Restaurant, noted herein. Tenant shall not use the Real Property in such as manner [sic] as to violate any applicable law, rule, ordinance or regulation of any governmental body (or any covenant of record as of the Effective Date of this Lease that runs with the Real Property). Landlord represents and warrants that use of the Real Property for parking and traffic flow associated with Tenant’s Taco Bell restaurant is not prohibited or limited by zoning or other restrictions. In the event use of the Real Property is hereafter prohibited or restricted by any law, ordinance or order of any governmental authority (or any covenant of record that runs with the Real Property), Tenant shall have the right to terminate this Lease by giving Landlord thirty (30) days notice in writing, which if so chosen shall serve to forever fully release Tenant from any and all obligations thereafter arising out of or under this lease.
Taco Bell contended that due to the lack of restrictions in the Lease agreement which was negotiated by the trust representative, a then presiding judge, both at the creation of the contract in 1991, and during the Sapir Trust Suit in 2006, the Appellant is barred from now presenting an argument alleging its intentions regarding the language of the Lease agreement.
At the hearing, the district court found that there was no breach of the Lease agreement by Taco Bell, as the Lease agreement fails to require Taco Bell to have an operating Taco Bell restaurant and in-turn utilize the Property as a parking lot. The district court found that the Lease agreement, which is unambiguous, did not provide any restrictions onto whom Taco Bell could assign its rights. Finally, the district court found that the Appellant’s arguments regarding Judge Sapir’s intent at the execution of the Lease agreement was meritless as the evidence presented failed to support the arguments. The district court stated specifically “too bad he 18didn’t put it in the contract.” The district court granted Taco Bell’s motion for summary judgment, dismissing the Appellant’s claims against Taco Bell.
On appeal, the Appellant argues that summary judgment was inappropriate in this matter as material issue of facts exist as to the intent of the parties regarding the Lease agreement. The Appellant, in support of its argument, cites Carter v. BRMAP, wherein the First Circuit opined that “[a]s a general rule, a motion for summary judgment ‘[i]s rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge or good faith.’ ” 591 So.2d 1184,1189 (La.App. 1st Cir.1991), (citing Penalber v. Blount, 550 So.2d 577, 583 (La.1989)). “Thus, in motions for summary judgment where a contract is ambiguous and the intent of the parties becomes a question of fact, very often there are conflicting affidavits concerning the intent of the parties and granting a summary judgment is not appropriate.” Id. The Appellant argues that it provided the deposition of Judge Sapir in which he states numerous times that his intent at the time of negotiating and executing the Lease agreement was for Taco Bell to always have an operating Taco Bell restaurant and parking lot on the Sapir Property, and that if and when Taco Bell could not fulfill this obligation, to *652 terminate the Lease agreement held between the parties.
La. C.C. art. 2045 provides that the interpretation of a contract is the determination of the common intent of the parties with courts giving the contractual words their generally prevailing meaning unless the words have acquired a technical meaning. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the intent of .the parties. La. C.C. art. 2046. Further, “the meaning and intent of the parties to a written instrument should be determined within the four |3corners of the document and its terms should not be explained or contradicted by extrinsic evidence.” Corbello v. Iowa Prod., 2002-0826, p. 6 (La.2/25/08), 850 So.2d 686, 694. Parol or extrinsic evidence is generally inadmissible to vary the terms of a written contract unless the written expression of the common intention of the parties is ambiguous. La. C.C. art. 1848; Ortego v. State, Through the Dep’t of Trans. & Develop., 1996-1322 (La.2/25/97), 689 So.2d 1358, 1364. A contract is considered ambiguous on the issue of intent when it lacks a provision bearing on that issue, the terms of a written contract are susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed. La. C.C. art. 1848. Furthermore, the Louisiana Supreme Court has previously held that the rules of contract construction do not authorize a perversion, of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of new contract when the terms express with sufficient clearness the parties’ intent. Campbell v. Melton, 2001-2578, p. 9 (La.5/14/02), 817 So.2d 69, 76. Additionally, the fact that one party may create a dispute about the meaning of a contractual provision does not render the provision ambiguous. Id. The Louisiana Supreme Court has also repeatedly explained that it is not within the province of courts to relieve parties of what they later decide is a “bad bargain.” Thus, if the contract agreement is not ambiguous, the party arguing ambiguity is still bound by its terms, even if it no longer likes the terms. Maloney v. Oak Builders, Inc., 256 La. 85, 97, 235 So.2d 386, 390 (1970).
It is undisputed that there was a Lease agreement held between the parties, Taco Bell and John Paul Sapir, LLC, giving Taco Bell the use of the Property as a parking lot for its patrons, dating back to 1991. It is also undisputed that since 11()Hurricane Katrina in August 2005, Taco Bell has not operated another restaurant at the said location and has not utilized the Sapir Property as a parking lot. It is further undisputed that Taco Bell has paid all the monthly rental payments from 1991 until 2009. Lastly, it is undisputed that pursuant to the terms of the Lease agreement giving Taco Bell the right to assign its interests in the Sapir Property to another company, so long as the rental payments are made timely, Taco Bell assigned the Sapir Property to Tulane to operate a parking lot.
In the matter sub judice, a review of the facts and pertinent law reveals that the evidence within the record overwhelmingly supports the district court’s ruling that Taco Bell did not breach the Lease agreement, and further that Judge Sapir, on behalf of the Trust, now the Appellant, should have included these restrictions and specifications in the Lease agreement since he asserts he went to great lengths negotiating them in 1991. The Appellant cannot prevail on its argument in that it failed to present evidence and proof that the Lease agreement, executed and in ef- *653 feet since 1991, is ambiguous and thus further interpretation was needed. The record reveals that the language of the Lease agreement is clear and explicit. By looking at the four corners of the Lease agreement, it can be concluded that the intent of the Appellant was to allow Taco Bell the use of the Sapir Property, as well as the ability to assign their rights to whichever entity it saw fit, so long as the new assignee did not operate a business contrary to law. The Appellant cannot argue that Judge Sapir meant to include a restriction that a Taco Bell restaurant must always be in operation at the location because as the record reveals, Taco Bell has not reopened its restaurant at the said location since 2005.
Further, the Appellant argues that its intent during the execution of the Lease agreement was to prevent any sort of business operations on the Sapir Property. In However, it failed to provide reasons and evidence as to why it gave Taco Bell the right to reassign its rights to the Sapir Property to a different entity. Furthermore, the Appellant failed to present reasons why Tulane’s operation of the parking lot violates any applicable law, rules or city ordinance. The Appellant’s argument that the Lease agreement is ambiguous by merely warranting a dispute about the intent behind the execution of the Lease agreement is meritless. John Paul Sapir, LLC, merely because it does not support the current operations which the Sapir Property is being used for, cannot rescind the Lease agreement. In short, the Appellant is still bound by the terms of the Lease agreement, even though Judge Sa-pir and the Appellant no longer like the terms of the agreement.

DECREE

Considering our findings that no genuine issue of material facts exist as to the interpretations and the intent behind the execution of the Lease agreement, John Paul Sapir, LLC, cannot prevail on its argument that the Lease agreement is ambiguous based on the conflicting intent of the parties. Thus, we affirm the judgment of the district court granting the Motion for Summary Judgment filed by YUM! BRANDS, INC.
AFFIRMED

. Phil Stein owned the Taco Bell Property at the time of the instant suit.