JOHNSON, Chief Justice,
dissents and assigns reasons.
hi respectfully dissent from the majority opinion in this case, which dismissed the class action claims of the Orleans Parish School Board (“OPSB”) teachers and employees who were subjected to mass termination immediately following Hurricane Katrina. The majority finds that plaintiffs’ claims are barred by res judicata, and further held that even if res judicata did not apply, the defendants did not violate the plaintiffs’ due process rights. I disagree.
The defendants’ res judicata claim was based on a September 18, 2007 settlement agreement between the OPSB and the United Teachers of . New Orleans (“UTNO”), which specifically dismissed several lawsuits and arbitration proceedings filed -by UTNO asserting violations of their collective bargaining agreements. The majority erroneously finds that the dismissal of these completely separate actions provides a basis for res judicata. Five elements must be satisfied for a finding that res judicata applies to bar a second action: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out Lof the transaction or occurrence that was the subject matter of the first litigation.[1] It is well established that the doctrine of res judicata is stricti juris, and any doubt *624 concerning the application of the principle must be resolved against its application.[2] In my mind, defendants’ res judicata claim must fail because the 2007 OPSB-UTNO settlement agreement did not include the pending Oliver class action case, involved entirely different claims from those involved in the Oliver class action suit, and did not involve the same parties.
While a valid compromise may form the basis of a plea of res judicata, “a party claiming res judicata based on a compromise agreement must have been a party to the compromise, and the authority of the thing adjudged extends only to the matters those parties intended to settle.”[3] There is no question that the Oliver class action was not part of the 2007 settlement agreement and that there was no intent to dismiss the class action claims set forth in this class action suit. The 2007 settlement agreement resolved three specific lawsuits and three specific arbitration proceedings between UTNO and the OPSB related to the OPSB’s violation of the collective bargaining agreements that were in effect at the time of Hurricane Katrina. The Oliver suit was not included as one of the three suits specifically made part of the settlement agreement. This is particularly noteworthy because at the time of the OPSB-UTNO settlement, the Oliver class action litigation had been active for approximately two years and although Oliver was pending at the time of settlement, the OPSB did not seek to have the litigation dismissed through the 2007 settlement. Notably, the OPSB’s own witness, OPSB Superintendent Darryl Kilbert, testified that he did not consider the Oliver class action a part of the OPSB-UTNO settlement agreement. Further, “when the words of the contract are |3clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.”[4] The 2007 settlement between the OPSB and UTNO is clear and explicit, requiring a strict interpretation as written. This court “has repeatedly explained that it is not within the province of courts to relieve parties of what they later decide is a ‘bad bargain.’ Thus, if the contract agreement is not ambiguous, the party arguing ambiguity is still bound by its terms, even if it no longer likes the terms.”[5] The Oliver suit is not referred to anywhere within the “four corners” of the OPSB-UTNO settlement. Thus, the majority improperly uses the OPSB-UTNO settlement as the basis to dismiss the class action claims of the Oliver plaintiffs.
Moreover, the UTNO-OPSB settlement agreement and the Oliver litigation clearly involve entirely separate claims. The 2007 settlement agreement involved limited claims arising out of collective bargaining agreements in place at the time of Hurricane Katrina, while the Oliver litigation involves claims of wrongful termination of tenured staff and teachers, as well as damages. Notably, the Oliver plaintiffs made clear that the suit was separate from any of the cases implicated in the UTNO-OPSB settlement agreement by stating the following in the petition:

DISCLAIMER: Plaintijfs do not represent members of a collective bargaining organization with the exception of the Professional Administrators of New Or
*625
leans Public Schools (PANOPSJ) and the request herein for “class action” status (including “teachers” or “para-educators”) shall in no way implicate any such representation.

Additionally, the settlement amount in the 2007 agreement constitutes only a fraction of that sought in the Oliver class action. The Oliver suit involves full compensation for the OPSB employees terminated and not recalled or rehired after | ¿Hurricane Katrina. Thus, the class action suit compensates for losses such as the employees’ earning capacity. Union members were offered only $1000.00 as part of the OPSB-UTNO settlement to compensate for the failure of the OPSB to comply with the collective bargaining agreements and pay certain benefits of union members.
Furthermore, I find there is no identity of parties in the 2007 settlement agreement and the Oliver class action litigation. While plaintiffs admit there is some small margin of overlap between the class members in Oliver and union members set to receive damages as a result of the OPSB’s violation of the collective bargaining agreements, clearly none of the Oliver plaintiffs contemplated dismissal or compromise of their wrongful termination claims as part of the 2007 settlement agreement. And, the 2007 settlement agreement clearly did not include the state defendants as parties, whereas the state defendants were made parties to the Oliver suit due to their alleged collusion with the OPSB. While the majority finds this fact to be of “no moment,” I cannot agree.
I also believe the principle of res judica-ta should be balanced with the interests of justice. As recognized by the court of appeal, application of res judicata should be denounced when the issues in the case were never settled, litigated, or adjudicated.[6] The court of appeal aptly noted that when addressing employment lawsuits, courts have been critical of union proceedings waiving or barring an employee’s right to seek judicial review of claims arising out of state and/or federal statutes.[7] The United States Supreme Court has recognized the | ./‘deep-rooted historic tradition that everyone should, have his own day in court.”[8] Thus, even if res judicata is applied in this case, I must disagree with the majority’s finding that no exceptional circumstances exist that would preclude its application. Louisiana law specifically provides for an “exceptional circumstances” exception to the application of res judicata.[9] La. R.S. 13:4232(A)(1) “provides discretion to decline preclusion and lends authority to the notion of not using the res judicata scythe to deny a litigant his *626 rights.”[10] As correctly found by the court of appeal, “it would be inequitable, unjust, and illogical to find that the minimal consideration received by the employees through the Union settlement would bar or waive their right to have their claims litigated and adjudicated through judicial proceedings. [T]he Board was fully aware that this case wás pending prior to the Union settlement and did not seek dismissal at that time.”[11] ‘While res judicata is a useful tool, it should not be used as a scythe applied mechanically to mow down claims where the party asserting the claim is not at fault for the lack of adjudication of that claim in the first suit.”[12]
Finally, I. find'the majority errs in finding there were no due process violations. I agree with court of appeal’s finding that the Oliver plaintiffs were deprived of their constitutionally protected property right to be recalled to employment without due process of law. This court has held that Teacher Tenure |fiLaws should be liberally construed in favor of their primary beneficiaries, tenured employees.[13] Additionally, this court has held that a school board must adhere to the procedures set forth in the Teacher Tenure Law.[14] It is well established that a teacher’s right in employment is a statutorily created vested property right protected by federal and state constitutions, requiring that certain procedural steps are followed before a teacher is terminated.[15]
At the time of the Reduction in Force (“RIF”), La. R.S. 17:81.4 required the OPSB to adhere to minimum standards when reducing workforce. The plaintiffs were denied due process because they were entitled to, but not afforded, the procedural protections of the OPSB’s Policy. The OPSB Personnel Policy 4118.4-R is consistent with the requirements of La. R.S. 17:81.4. The policy provided that if an OPSB employee is discharged due to a RIF, after receiving notice, the employee is entitled to a grievance hearing or appeal. The trial court found that no member of the plaintiff class received any type of grievance hearing after the RIF notice was distributed. Furthermore, OPSB Personnel Policy 4118.4-R required that a mandatory recall list be created to fill vacant positions resulting from a RIF. The OPSB clearly violated its own policy by not creating the required recall list.
In my view, the record supports plaintiffs’ claims of due process violations. As found by the trial court, “rather than honoring the vested property interest held by experienced teachers qualified under Louisiana’s standard, the State conducted a nationwide teacher search to fill vacancies with the RSD, and, among other things, contracted with Teach for America to hire inexperienced and non-certified college graduates, thereby preventing the plaintiff class from exercising their legally protected property rights.”
■ j7For the reasons stated herein, I dissent from the majority opinion and would affirm the ruling of the court of appeal.
*627 GUIDRY, Justice, additionally concurs and assigns reasons.
|,The impact of Hurricane Katrina and its aftermath upon the citizens of New Orleans and the State of Louisiana was devastating and will be long-lasting. Equally affected were the plaintiffs, dedicated teachers and employees of the Orleans Parish School Board. Nevertheless, the facts of the case before us, and the law of this state, compel the result reached by the majority.

. Burguieres v. Pollingue, 02-1385 (La.2/25/03), 843 So.2d 1049, 1053.

. Kelty v. Brumfield, 93-1142 (La.2/25/94), 633 So.2d 1210, 1215.

. Ortego v. State, Dept. of Transp. and Development, 96-1322 (La.2/25/97), 689 So.2d 1358, 1363. (Emphasis added).

. La. C.C. art. 2046.

. John Paul Sapir, LLC v. Yum! Brands, Inc., 12-0824 (La.App. 4 Cir. 12/5/12), 106 So.3d 646 (citing Mahoney v. Oak Builders, Inc., 256 La. 85, 97, 235 So.2d 386, 390 (1970)).

. Oliver v. Orleans Parish School Bd., 12-1520 (La.App. 4 Cir. 1/15/14), 133 So.3d 38, 54 (citing Igbokwe v. Moser, 12-1366 (La.App. 4 Cir. 4/24/13), 116 So.3d 727, 731 writ denied, 13-1196 (La.9/13/13), 120 So.3d 698; Fine v. Regional Transit Auth., 95-2603 (La.App. 4 Cir. 6/26/96), 676 So.2d 1134, 1137; Schneidau v. Vanderwall, 08-1274 (La.App. 5 Cir. 5/26/09), 17 So.3d 61, 64; Billiot v. LeBeouf Brothers Towing Co., 93-1697 (La.App. 1 Cir. 6/24/94), 640 So.2d 826); Ortiz v. Ortiz, 01-1252 (La.App. 5 Cir. 05/15/02), 821 So.2d 35, 38; Brouillard v. Aetna Cas. and Surety Co., 94-1559 (La.App. 3 Cir. 5/10/95), 657 So.2d 231, 233.

. Oliver, 133 So.3d at 52 (citing Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); Clukey v. Town of Camden, 717 F.3d 52 (1st Cir.2013)).

. See Richards v. Jefferson Cnty., Ala., 517 U.S. 793, 798, 116 S.Ct. 1761, 1766, 135 L.Ed.2d 76 (1996) (quoting Martin v. Wilks, 490 U.S. 755, 761-762, 109 S.Ct. 2180, 2184, 104 L.Ed.2d 835 (1989)) (citing 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4449, p. 417 (1981)).

. See La. R.S. 13:4232(A)(1).

. Oliver, 133 So.3d at 53. (Internal citation removed).

. Id. at 56.

. Terrebonne Fuel & Lube, Inc. v. Placid Ref. Co., 95-0654 (La.1/16/96), 666 So.2d 624, 635; see also M. David Kurtz and Mark W. Frilot, Res Judicata in Louisiana: A Synthesis of Competing Interests, 53 La. B.J. 445 (2006).

. Howell v. Winn Parish Sch. Bd., 332 So.2d 822, 827 (La.1976).

. Spears v. Beauregard Parish School Board, 02-2870 (La.6/27/03), 848 So.2d 540.

. U.S.C.A. Const. Amend. 14; La. Const. art. 1, § 2; La. R.S. 17:443.