<u>UNPUBLISHED</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-1553**

EASTERN ASSOCIATED COAL COMPANY,

Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR,

Respondent,

ROY M. VEST,

Claimant.

On Petition for Review of an Order of the Benefits Review Board.
(11-0871-BLA)

Argued: May 14, 2014                    Decided: July 3, 2014

Before GREGORY and THACKER, Circuit Judges, and DAVIS, Senior
Circuit Judge.

Petition denied by unpublished per curiam opinion.

**ARGUED:** Mark Elliott Solomons, GREENBERG TRAURIG, LLP,
Washington, D.C., for Petitioner. Sarah Marie Hurley, UNITED
STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent.
**ON BRIEF:** Laura Metcoff Klaus, GREENBERG TRAURIG LLP,
Washington, D.C., for Petitioner. M. Patricia Smith, Solicitor
of Labor, Rae Ellen James, Associate Solicitor, Gary K.

Stearman, Office of the Solicitor, UNITED STATES DEPARTMENT OF
LABOR, Washington, D.C., for Respondent.

─────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Eastern Associated Coal Company ("Petitioner") petitions for review of the Benefits Review Board's ("BRB" or "Board") decision and order affirming the administrative law judge's ("ALJ") grant of living miner benefits to its former employee, Roy Michael Vest ("Claimant"),[1] under the Black Lung Benefits Act ("BLBA"), 30 U.S.C. §§ 901–945. Petitioner argues that the benefits award must be vacated because 20 C.F.R. § 725.465(d), a regulation invoked by the Director of the Office of Workers' Compensation Programs ("Director") in the underlying proceedings, violates the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551-559, 701-706. Petitioner also contends that a previously adjudicated and unsuccessful claim for survivor's benefits filed by Claimant's widow, Kimberly Vest McKinney ("Mrs. Vest"), operates to collaterally estop the benefits award in the instant case.

---

[1] Claimant died on May 8, 2006. The Black Lung Disability Trust Fund paid interim benefits pending final adjudication of his claim, and our decision denying Petitioner's appeal will obligate Petitioner to reimburse that fund. See 30 U.S.C. § 934(b); 20 § C.F.R. 725.603(a). This appeal therefore presents a justiciable case or controversy regardless of the interest (if any) retained by Claimant's beneficiaries in the benefits award. See Old Ben Coal Co. v. Dir., OWCP, 292 F.3d 533, 538 n.4 (7th Cir. 2002); see also Dir., OWCP v. Nat'l Mines Corp., 554 F.2d 1267, 1271-72 (4th Cir. 1977).

3

As explained below, we disagree with Petitioner's argument on both fronts. First, we conclude that there is no conflict between the APA and 20 C.F.R. § 725.465(d). Second, we conclude that Claimant is not precluded from relitigating issues decided in his widow's claim because, as a non-party, he did not have a full and fair opportunity to litigate the issues decided in that proceeding. We therefore deny the petition for review.

I.

A.

Statutory Background

Congress enacted the BLBA and created the Black Lung Disability Trust Fund ("Trust Fund" or "Fund") in order to provide benefits to coal miners disabled by pneumoconiosis[2] and the surviving dependents of miners who died of the disease. See 30 U.S.C. § 901(a); 26 U.S.C. § 9501(d)(1). The Secretary of Labor ("Secretary") is vested with "broad authority to implement" this statutory mandate, Elm Grove Coal Co. v. Dir., OWCP, 480 F.3d 278, 293 (4th Cir. 2007), by promulgating "such regulations as [he] deems appropriate to carry out the provisions" of the BLBA, 30 U.S.C. § 936. The Director, as the

---

[2] "Pneumoconiosis," or black lung disease, is a "chronic dust disease of the lung and its sequelae" caused by inhaling coal dust into the lungs over a long period of time. 30 U.S.C. § 902(b).

4

Secretary's designee, is charged with administering the BLBA and is a party to all benefits adjudications.  See 30 U.S.C. § 932(k); 20 C.F.R. § 725.482(b).

Both miners and their survivors may seek benefits under the BLBA by filing claims with the district director in the Department of Labor's ("DOL") Office of Workers' Compensation Programs ("OWCP").  See 20 C.F.R. §§ 725.301-725.311.  After investigating the claim, the district director determines whether the claimant is eligible for benefits and which of the miner's former employers, if any, will be held responsible.  See id. §§ 725.401-725.423, 725.490-725.497.  Any party may appeal the district director's determination to the Office of Administrative Law Judges and request a formal hearing before an ALJ.  See id. §§ 725.450-725.483.  A party who is "adversely affected or aggrieved" by the ALJ's subsequent decision may, in turn, appeal that decision to the BRB.  Id. §§ 802.201(a), 725.481; see also 33 U.S.C. § 921(b)(3). Finally, "[a]ny person adversely affected or aggrieved by a final order of [the BRB]" may seek judicial review in the Court of Appeals for the circuit in which the injury occurred.  33 U.S.C. § 921(c); 20 C.F.R. § 725.482.

The Trust Fund, which is financed by an excise tax on coal production, is responsible for the payment of black lung benefits in certain circumstances, such as when "there is no

5

operator who is liable" for a benefits award.  See 26 U.S.C. §§ 9501(d), 4121.  In cases implicating the Fund, the Director is "charged with a fiduciary duty to protect" the Fund's assets, Dir., OWCP v. Hileman, 897 F.2d 1277, 1281 n.2 (4th Cir. 1990), and operates as the Fund's "trustee," Boggs v. Falcon Coal Co., 17 Black Lung Rep. 1-62, 1-65 (Ben. Rev. Bd. 1992) (internal quotation marks omitted); see also 26 U.S.C. § 9501(a)(2) (the Secretary is a "trustee[] of the [Trust Fund]").  Otherwise, as the BRB has observed, "the Trust Fund would be completely unprotected."  Boggs, 17 Black Lung Rep. at 1-65 (internal quotation marks omitted); see also Dir., OWCP v. Newport News Shipbuilding & Dry Dock Co., 676 F.2d 110, 114 (4th Cir. 1982) ("[O]nly the Director has any real interest in protecting the [Trust Fund] against unjustified payments.").

After a claim is filed, the Trust Fund is required to make interim payments to a claimant pending final resolution of his claim if the district director makes an "initial determination of eligibility" and the responsible operator "fails or refuses to commence . . . payment" within thirty days. 20 C.F.R. §§ 725.522, 725.420; see also 26 U.S.C. § 9501(d)(1). The Trust Fund is automatically subrogated to the rights of a claimant when it makes these payments, and the Director "may, as appropriate, exercise such subrogation rights." 20 C.F.R. §§ 725.602(b), 725.482(b).  Upon final adjudication of the

6

claim, the Director may seek reimbursement of the interim payments from the responsible operator, see 30 U.S.C. § 934(b), or, if the claim is denied, from the claimant himself for "overpayments," 20 C.F.R. § 725.522(b). The Director thus "has a direct financial interest in the outcome in cases . . . in which the Trust Fund has paid interim benefits." Boggs, 17 Black Lung Rep. at 1-66.

## B.

## Procedural History

Claimant, a retired coal miner, filed an application for living miner's benefits on May 16, 2001. See 30 U.S.C. § 922(a)(1) (authorizing living miner's benefits for coal miners totally disabled due to pneumoconiosis).[3] On December 31, 2002, the district director determined Claimant was eligible for benefits and named Petitioner, one of Claimant's former employers, the operator responsible for payment. Petitioner contested the district director's determination, refused to commence benefit payments, and requested a formal hearing before

---

[3] Because Claimant's claim was filed after January 19, 2001, it is governed by 20 C.F.R. Parts 718 and 725, see 20 C.F.R. §§ 718.2, 725.2, and is not affected by the Patient Protection and Affordable Care Act's amendments to the BLBA, which apply only to claims filed after January 1, 2005, that are pending on or after March 23, 2010, see Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 1556, 124 Stat. 119, 260 (2010).

an ALJ.  The Trust Fund, consequently, assumed responsibility for paying interim benefits to Claimant pending final adjudication of his claim.  See 26 U.S.C. § 9501(d)(1).  His claim was thus "in pay status from [the Trust Fund] as of February 1, 2001."  J.A. 86.[4]

On January 12, 2005, ALJ Edward T. Miller ("ALJ Miller") conducted a formal hearing on Claimant's application. While awaiting a decision, Claimant died on May 8, 2006, at the age of 52.  Two days later, ALJ Miller issued a decision and order awarding Claimant benefits and holding Petitioner liable as the responsible operator.  Following Petitioner's appeal, the BRB affirmed in part, vacated in part, and remanded on May 23, 2007.  The BRB reasoned, inter alia, that ALJ Miller had failed to provide an adequate foundation for his responsible operator determination and two of his evidentiary rulings, which tainted his ultimate conclusions as to Claimant's eligibility for benefits and Petitioner's liability for the same.  The BRB remanded the case with instructions to reconsider the inadequate rulings and, concomitantly, reweigh the relevant evidence.

Following her husband's death, Mrs. Vest filed a separate claim for survivor's benefits on May 31, 2006.  See 30

---

[4] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

8

U.S.C. § 922(a)(2) (providing for survivor's benefits "[i]n the case of death of a miner due to pneumoconiosis").[5]  On January 10, 2007, the district director determined that Mrs. Vest was ineligible for benefits, reasoning that Claimant's death was not caused by pneumoconiosis and, as such, would not support an award of survivor's benefits under the BLBA.  Mrs. Vest contested this determination and requested a hearing before an ALJ.  The following year, on May 6, 2008, Administrative Law Judge Jeffrey Tureck ("ALJ Tureck") conducted a formal hearing on her claim.

Meanwhile, Claimant's remanded claim for living miner's benefits remained largely dormant.  After more than a year of inactivity, ALJ Miller issued an order on October 3, 2008, directing the parties to designate certain pieces of evidence in order to facilitate his final decision as to Claimant's claim.  Claimant's counsel responded with a letter advising ALJ Miller that Claimant was deceased, he had no authority to act on behalf of Claimant's estate, and Claimant's widow had remarried and was no longer interested in pursuing his claim.  Given this information, ALJ Miller issued a show cause

---

[5]  Because Mrs. Vest's claim was filed after January 19, 2001, and was not pending as of March 23, 2010, it is governed by the same version of the BLBA and regulations that govern Claimant's claim.

9

order soliciting input "as to how, in [the parties'] respective interests, this tribunal should proceed with the disposition of this claim." J.A. 87.

In his response to the show cause order, the Director urged that the claim be resolved on its merits, as the Trust Fund had made interim payments to Claimant and "[a] final adjudication on the merits of [his] claim is necessary to determine the Director's right to reimbursement for those payments[,] from the employer or [Claimant's] estate." J.A. 84. The Director pointed to 20 C.F.R. § 725.465(d)[6] in support of the proposition that, in light of the Trust Fund's payment of interim benefits, the case could not be dismissed without the Director's consent. Id. at 85. Petitioner did not file a response.

On November 3, 2008, ALJ Tureck issued a decision and order denying Mrs. Vest's claim for survivor's benefits, concluding that she had failed to establish a necessary element of her claim, i.e., that Claimant suffered from pneumoconiosis.

---

[6] This regulation provides:

> No claim shall be dismissed in a case with respect to which payments prior to a final adjudication have been made to the claimant in accordance with [20 C.F.R.] § 725.522, except upon the motion or written agreement of the Director.

20 C.F.R. § 725.465(d).

10

See J.A. 82 ("Since [Claimant] did not have pneumoconiosis, [Mrs. Vest's] black lung survivor's claim must be denied.").[7] Inasmuch as neither Mrs. Vest nor the Director filed an appeal or otherwise contested ALJ Tureck's decision, it became final on December 3, 2008. See 33 U.S.C. § 921(a) ("A compensation order . . . shall become final at the expiration of the thirtieth day" after it is "filed in the office of the deputy commissioner.").

On January 27, 2009, ALJ Miller issued his second decision and order awarding living miner's benefits to Claimant under the BLBA. In addition to holding Petitioner liable as the responsible operator, ALJ Miller determined the evidence was sufficient to establish that Claimant suffered from totally

---

[7] Although the underlying merit of Mrs. Vest's benefits determination is not at issue in this appeal, we are compelled to note that ALJ Tureck found "the [negative] CT scan interpretations by Dr. [Paul] Wheeler," an Associate Professor of Radiology at the Johns Hopkins Medical institutions, to be "most probative" in concluding that Claimant did not suffer from pneumoconiosis. J.A. 82. Dr. Wheeler's opinions have since been challenged in a joint investigation by ABC News and the Center for Public Integrity ("CPI"), which found that he had never once, in reading more than 3,400 x-rays over the course of thirteen years, interpreted an x-ray as positive for pneumoconiosis. The DOL recently issued a bulletin instructing its district directors to "(1) take notice of this reporting and (2) not credit Dr. Wheeler's negative readings for pneumoconiosis in the absence of persuasive evidence either challenging the CPI and ABC conclusions or otherwise rehabilitating Dr. Wheeler's readings." Div. of Coal Mine Workers' Comp., U.S. Dep't of Labor, BLBA Bulletin No. 14-09 (June 2, 2014), available at http://www.dol.gov/owcp/dcmwc/blba/indexes/BL14.09OCR.pdf.

11

disabling clinical and legal pneumoconiosis as well as complicated pneumoconiosis. Following this decision, Petitioner filed a motion to dismiss, which ALJ Miller denied, and a motion for reconsideration, which ALJ William S. Colwell ("ALJ Colwell") denied. Petitioner timely appealed both orders.

The BRB affirmed the benefits award and the order denying reconsideration on September 27, 2012. Petitioner unsuccessfully sought reconsideration before the BRB, and this petition for review followed. We have jurisdiction pursuant to 33 U.S.C. § 921(c).[8]

---

[8] Prior to oral argument in this case, we directed the parties to be prepared to address the jurisdictional implications of the petition for review to this court, in which Petitioner sought "review of the order of the [BRB] . . . issued on February 25, 2013, affirming the decision and order of the [BRB] dated September 27, 2012." J.A. 1. Because the February 25, 2013 order referenced in the petition was a summary order denying Petitioner's motion for reconsideration, over which we do not have jurisdiction, see Betty B Coal Co. v. Dir., OWCP, 194 F.3d 491, 496 (4th Cir. 1999), we questioned whether Petitioner had adequately preserved the BRB's September 27, 2012 final order for our review. During oral argument, however, the Director conceded that, despite Petitioner's inartful presentation, its intent to appeal the final order was clear. See MLC Automotive, LLC v. Town of Southern Pines, 532 F.3d 269, 279 (4th Cir. 2008) (noting parenthetically that "'a party may demonstrate its intention to appeal from one order despite referring only to a different order in its petition for review if the petitioner's intent can be fairly inferred from the petition or documents filed more or less contemporaneously with it,'" and that "'without a showing of prejudice by the appellee, technical errors in the notice of appeal are considered harmless'" (quoting Indep. Petrol. Ass'n of Am. v. Babbitt, 235 F.3d 588, 593 (D.C. Cir. 2001))).

12

II.

We review the BRB's conclusions of law de novo. See Collins v. Pond Creek Min. Co., --- F.3d ----, 2014 WL 1711718, at *3 (4th Cir. 2014). In so doing, "our review is confined exclusively to the grounds actually invoked by the [BRB]." Island Creek Coal Co. v. Henline, 456 F.3d 421, 426 (4th Cir. 2006) (internal quotation marks omitted).

III.

Petitioner raises two arguments on appeal. First, it contends 20 C.F.R. § 725.465(d) violates the APA by impermissibly curtailing the ALJ's discretion. Second, it contends the BRB erred in failing to give preclusive effect to ALJ Tureck's finding that Claimant did not have pneumoconiosis. We address each argument in turn.

A.

We begin with Petitioner's challenge to 20 C.F.R. § 725.465(d). Section 725.465 is titled "dismissals for cause" and permits an ALJ to dismiss a claim prior to a final adjudication of eligibility when (1) a claimant fails to attend a hearing without good cause, (2) a claimant fails to comply with a lawful order, or (3) there has been a prior lawful final adjudication of a claim or defense. See 20 C.F.R. § 725.465(a)(1)-(3). The specific subsection at issue here, 20 C.F.R. § 725.465(d), prohibits an ALJ from dismissing a claim

13

that otherwise meets these eligibility requirements "in a case with respect to which payments prior to a final adjudication have been made to the claimant in accordance with [20 C.F.R.] § 725.522" -- i.e., those cases in which the Trust Fund has paid interim benefits pending final adjudication -- "except upon the motion or written agreement of the Director." Id. § 725.465(d). In terms of Claimant's case, as ALJ Miller observed, "[t]he Director invoked § 725.465(d)" in response to the show cause order, "preclud[ing] dismissal without the Director's consent." J.A. 53.[9]

Petitioner contends 20 C.F.R. § 725.465(d) is invalid on its face because it interferes with an ALJ's independent decision-making authority under the APA, specifically 5 U.S.C. §§ 554(d)(1), 554(d)(2), and 556(b).[10] In Petitioner's view, the

---

[9] We decline the Director's invitation to find Petitioner's challenge to this regulation waived. See Toler v. Eastern Assoc. Coal Corp., 43 F.3d 109, 113 (4th Cir. 1995) ("[W]aiver is a nonjurisdictional doctrine that calls for flexible application." (citation omitted)). Although Petitioner did not articulate its argument below in terms of the APA, it did challenge the Director's standing, premised upon 20 C.F.R. § 725.465(d), to pursue the case to a merits determination in Claimant's absence. See id. (rejecting waiver argument where petitioner asserted the same fundamental claim before the agency and district court, but used different arguments in each forum to press that claim).

[10] Section 422(a) of the BLBA, 30 U.S.C. § 932(a), incorporates Section 19(d) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 919(d), which in turn requires that hearings be conducted in accordance with the APA, (Continued)

14

regulation "impermissibly cabins an ALJ's discretion by requiring the Director's consent in order to dismiss a claim." Appellant's Br. 9. This, Petitioner claims, is in violation of the provisions of the APA that require an ALJ to make decisions in an "impartial manner," 5 U.S.C. § 556(b), and prohibit an ALJ from "consult[ing] a person or party on a fact in issue . . . [without] notice and opportunity for all parties to participate," id. § 554(d)(1), or "be[ing] responsible to or subject to the supervision or direction of an employee or agent engaged in the performance of investigative or prosecuting functions for an agency," id. § 554(d)(2).

Petitioner's argument is meritless. As we have noted, the Director is a party to all benefits proceedings under the BLBA, responsible for both administering the statute and protecting the Trust Fund. In cases where, as here, the Trust Fund makes interim benefit payments, the Director is also responsible for seeking reimbursement from either the employer or the claimant upon final adjudication of the claim. See 30

_____

20 C.F.R. § 725.452(a); see also Dir., OWCP v. Greenwich Collieries, 512 U.S. 267, 271 (1994) ("The BLBA . . . incorporates the APA (by incorporating parts of the LHWCA), but it does so 'except as otherwise provided . . . by regulations of the Secretary.'" (quoting 30 U.S.C. § 932(a))); Bethlehem Mines Corp. v. Henderson, 939 F.2d 143, 148 (4th Cir. 1991) ("The requirements of the APA are . . . applicable to [DOL] black lung adjudications[.]").

15

U.S.C. § 934(b)(4)(B) (requiring the operator's liability be "finally determined" before the reimbursement obligation may be enforced); 20 C.F.R. § 725.522(c) (requiring the claimant's eligibility be "determined" before overpayments may be recovered). As the BRB stated more than twenty years ago, in rejecting an identical challenge to the same regulation:

> The Director . . . has a direct financial interest in the outcome in cases arising under the [BLBA] in which the Trust Fund has paid interim benefits or medical benefits pending a final determination of eligibility. Therefore, when the Trust Fund has commenced benefit payments to claimant prior to a final determination of entitlement, the Director, as trustee of the Trust Fund, must be afforded the opportunity to recoup Trust Fund expenditures in the event that the award of benefits is ultimately reversed on final adjudication. It follows that the Director's consent must be obtained before a case in which the Trust Fund has paid interim or medical benefits may be dismissed.

Boggs v. Falcon Coal Co., 17 Black Lung Rep. 1-62, 1-66 (Ben. Rev. Bd. 1992) (emphasis supplied) (internal citations and footnotes omitted). Petitioner's efforts to discredit this opinion notwithstanding,[11] it retains its persuasive force.

---

[11] Petitioner cites to Greenwich Collieries and Dir., OWCP v. Newport News Shipbuilding & Dry Dock Co. ("Harcum"), 514 U.S. 122 (1995), for the proposition that the Supreme Court has, post-Boggs, rejected the BRB's "approach." Appellant's Br. 10. These two cases are inapposite. In Greenwich Collieries, for example, the Director took the position that an existing BLBA regulation permitted it to deviate from an APA standard. See 30 (Continued)

Further, we see no conflict between the challenged regulation and the cited provisions of the APA. Section 725.465(d), by its plain language, cannot reasonably be interpreted to permit the Director to "supervis[e] or direct[]" an ALJ in the performance of his duties or "participate or advise" in an ALJ's decision. 5 U.S.C. § 554(d)(2). To the contrary, as the Director points out, the regulation does not dictate any particular result, only that the DOL make "some final determination on the merits when . . . the Trust Fund has paid interim benefits," Appellee's Br. 30 (emphasis in original), so that the Director may thereafter seek reimbursement of the Fund from the appropriate party. In so doing, the regulation does not implicate an ALJ's impartiality under 5 U.S.C. § 556(b), but "simply protects the interests of the Trust Fund, and ensures that the Director, as a party to the litigation, receives a complete adjudication of his interests," 65 Fed. Reg. 79920-01, 80005 (December 20, 2000) (discussing a

---

U.S.C. § 932(a) (The BLBA incorporates the APA "except as otherwise provided . . . by regulations of the Secretary." (emphasis supplied)). The Supreme Court rejected the Director's argument, concluding that a regulation must unambiguously reject an APA standard in order to preclude its incorporation into the BLBA under 30 U.S.C. § 932(a). See Greenwich Collieries, 512 U.S. at 271. Harcum involved a question of the Director's standing to appeal an award of disability benefits under the LHWCA and did not touch on the APA provisions that are relevant to this case. See Harcum, 514 U.S. at 132-36.

17

similar regulation, 20 C.F.R. § 725.465(b), that prohibits the ALJ from dismissing the operator designated as the responsible operator without the Director's consent).

The Secretary is statutorily authorized to promulgate regulations "appropriate to carry out the provisions" of the BLBA in accordance with the notice-and-comment rule-making provisions of the APA. 30 U.S.C. § 936(a); see also Smiley v. Citibank (South Dakota), N.A., 517 U.S. 735, 741 (1996) (APA notice and comment "designed to assure due deliberation"). Section 725.465(d) originated from just such an exercise of this "broad authority." Elm Grove Coal Co. v. Dir., OWCP, 480 F.3d 278, 293 (4th Cir. 2007). We are therefore bound to uphold this regulation under Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, 467 U.S. 837, 842–43 (1984), unless it is "procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." United States v. Mead Corp., 533 U.S. 218, 227 (2001) (citing 5 U.S.C. §§ 706(2)(A), (D))). We find no such flaw here. The Director, as trustee of the Fund and administrator of the BLBA, is a real party in interest in the category of claims exempted from summary dismissal by 20 C.F.R. § 725.465(d), and the Secretary has, consistent with the APA, determined that the Director should be entitled to fully pursue his interests in order to maintain the Fund's fiscal integrity

18

and promote the BLBA's compensatory purpose. We will not second-guess that decision.

B.

We turn next to Petitioner's contention that the BRB erred in failing to accord preclusive effect to the finding, made in ALJ Tureck's November 3, 2008 decision in Mrs. Vest's survivor's claim, that Claimant did not have pneumoconiosis. The Director counters that Petitioner waived this defense by not raising it until after ALJ Miller had fully adjudicated Claimant's claim, or, in the alternative, that Petitioner cannot establish the fifth element of the defense, namely, "that the party against whom collateral estoppel is asserted 'had a full and fair opportunity to litigate the issue in the previous forum.'" Collins v. Pond Creek Mining Co., 468 F.3d 213, 217 (4th Cir. 2006) ("Collins I") (quoting Sedlack v. Braswell Servs. Group, Inc., 134 F.3d 219, 224 (4th Cir. 1998)).

1.

The doctrine of collateral estoppel, also termed issue preclusion, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." Taylor v. Sturgell, 553 U.S. 880, 891 (2008) (internal quotation marks omitted); see also In re Microsoft Corp. Antitrust Litig., 355

19

F.3d 322, 326 (4th Cir. 2004).  We have held that findings of fact in administrative adjudications of black lung benefits claims "are to be accorded the same collateral estoppel effect they would receive if made by a court."  Collins I, 468 F.3d at 217 (citing Jones v. SEC, 115 F.3d 1173, 1178 (4th Cir. 1997)). We require the party invoking collateral estoppel to establish the following elements:

> (1) that "the issue sought to be precluded is identical to one previously litigated" ("element one"); (2) that the issue was actually determined in the prior proceeding ("element two"); (3) that the issue's determination was "a critical and necessary part of the decision in the prior proceeding" ("element three"); (4) that the prior judgment is final and valid ("element four"); and (5) that the party against whom collateral estoppel is asserted "had a full and fair opportunity to litigate the issue in the previous forum" ("element five").

Collins I, 468 F.3d at 217 (quoting Sedlack, 134 F.3d at 224).

Here, the BRB rested its decision on the fifth element of this test, concluding that Claimant was "the party against whom the doctrine is being asserted" and did not have a "full and fair" opportunity to litigate the issue of pneumoconiosis in Mrs. Vest's case because he was deceased.  J.A. 13–14.  Under the Chenery doctrine,[12] then, our review of the BRB's decision to

---

[12] The Chenery doctrine provides, "an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be
(Continued)

20

reject Petitioner's collateral estoppel defense is limited to this element. See Island Creek Coal Co. v. Henline, 456 F.3d 421, 426 (4th Cir. 2006) ("Affirming the Board's [decision] on an alternative ground not actually relied upon by the Board is prohibited under the Chenery doctrine."). We thus decline to address the Director's alternative waiver argument and proceed to the merits of Petitioner's claim. See Grigg v. Dir., OWCP, 28 F.3d 416, 418 (4th Cir. 1994) (noting that we are "unable to affirm" on a ground not relied on by the BRB, "even if we were so inclined." (citations omitted)).

2.

In order to evaluate whether "the party against whom collateral estoppel is asserted" was adequately represented in the prior proceeding, Collins I, 468 F.3d at 217 (citation omitted), we must first identify the operative "party." On this front, it is clear that Petitioner directs its collateral estoppel argument against Claimant's living miner's claim, regardless of its current ownership, and that the Director's

---

sustained." SEC v. Chenery Corp., 318 U.S. 80, 95 (1943). We have held that this doctrine applies to black lung claims. See Henline, 456 F.3d at 426 ("[I]n reviewing an order of the Board directing payment of black lung benefits, our review is confined exclusively to the grounds actually invoked by the Board." (citing Gulf & W. Indus. v. Ling, 176 F.3d 226 (4th Cir. 1999))).

interest in pursuing this case is wholly derivative of, and limited by, Claimant's eligibility for the same. We therefore agree with the BRB that Claimant is the appropriate "party" against whom to measure Petitioner's collateral estoppel defense.[13]

It is undisputed that Claimant was deceased when Mrs. Vest brought her survivor's action and, as such, was not a party to her claim. As observed by the Supreme Court, "[a] person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit," such that "[t]he application of claim and issue preclusion to nonparties . . . runs up against the 'deep-rooted historic tradition that everyone should have his own day in court.'" Taylor, 553 U.S. at 892-93 (quoting Richards v. Jefferson Cnty., Ala., 517 U.S. 793, 798 (1996)). Consequently, "collateral estoppel ordinarily applies only against persons who

---

[13] The Director, although a party to Mrs. Vest's claim, was not entitled to appeal ALJ Tureck's decision to the BRB because he was not "aggrieved" by the denial of benefits. 20 C.F.R. § 802.201(a). As such, even if we were to view the Director as the "party against whom collateral estoppel is asserted" for the purposes of this appeal, it is evident that he did not have a "full and fair opportunity to litigate the issue in the previous forum" as a matter of law. Collins I, 468 F.3d at 217 (internal quotation marks omitted); see also 62 Fed. Reg. 3338-01, 3353 (Jan. 22, 1997) (noting that a party in a black lung proceeding may not be bound by an ALJ's prior finding if the party was not entitled to appeal the decision in which that finding was made to the BRB).

were parties to the prior suit." Martin v. Am. Bancorp. Ret. Plan, 407 F.3d 643, 654 n.18 (4th Cir. 2005) (internal quotation marks omitted); see also Taylor, 553 U.S. at 893. Like other rules, however, "the rule against nonparty preclusion is subject to exceptions." Taylor, 553 U.S. at 893.

In Taylor, the Supreme Court enumerated six categories of historically-accepted exceptions where preclusion principles may be applied to a person who was not a party to the first proceeding. The Eleventh Circuit has summarized these exceptions as follows:

> A court may apply nonparty preclusion if: (1) the nonparty agreed to be bound by the litigation of others; (2) a substantive legal relationship existed between the person to be bound and a party to the judgment; (3) the nonparty was adequately represented by someone who was a party to the suit; (4) the nonparty assumed control over the litigation in which the judgment was issued; (5) a party attempted to relitigate issues through a proxy; or (6) a statutory scheme foreclosed successive litigation by nonlitigants.

Griswold v. Cnty. of Hillsborough, 598 F.3d 1289, 1292 (11th Cir. 2010) (citing Taylor, 553 U.S. at 893-95). The Supreme Court has cautioned, however, that these categories are

23

"discrete exceptions that apply in limited circumstances." Taylor, 553 U.S. at 898 (internal quotation marks omitted).[14]

Petitioner neither cites Taylor nor explicitly argues that this case fits any of the recognized exceptions. It does, however, argue that issue preclusion is appropriate here because Claimant and Mrs. Vest were in "a fiduciary relationship." Appellant's Br. 20 (citing Sea-Land Servs. v. Gaudet, 414 U.S.

---

[14] Notably, nonmutual collateral estoppel may be invoked either offensively, by a plaintiff who "seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party," or, as in this case, defensively, by a defendant who seeks to bar a plaintiff from relitigating an issue previously decided in its favor in a suit involving another plaintiff. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.4 (1979). It is only in the latter category -- where a party to a prior judgment seeks to bind a nonparty to that judgment in a subsequent proceeding -- that the specific, delineated categories set forth in Taylor come into play. See Taylor, 553 U.S. at 892 (setting forth explicit limitations on "[t]he application of claim and issue preclusion to nonparties" of the proceeding sought to be given preclusive effect (emphasis supplied)); see also Parklane, 439 U.S. at 327 (emphasizing the "obvious difference in position between a party who has never litigated an issue and one who has fully litigated and lost"). The instant case is thus readily distinguishable from our line of cases permitting the widow of a black lung benefits recipient to use offensive nonmutual collateral estoppel to establish pneumoconiosis in a survivor's action against her husband's employer. See, e.g., Collins I, 468 F.3d at 222-23. In such claims, "[a]lthough the widow was not a party to the miner's claim, [the employer] itself was. Treating [the employer] as bound by the outcome is a straightforward application of offensive nonmutual issue preclusion." Zeigler Coal Co. v. Dir., OWCP, 312 F.3d 332, 334 (7th Cir. 2002) (emphasis supplied) (citation omitted).

24

573 (1974)).  In so doing, it effectively invokes Taylor's third category, which provides,

> "in certain limited circumstances," a nonparty may be bound by a judgment because []he was "adequately represented by someone with the same interests who [wa]s a party" to the suit.  Richards, 517 U.S. at 798 (internal quotation marks omitted). Representative suits with preclusive effect on nonparties include . . . suits brought by trustees, guardians, and other fiduciaries, see [Gaudet, 414 U.S. at 593]. See also 1 [Restatement (Second) of Judgments] § 41.

553 U.S. at 894-95.  The Supreme Court went on to stress that "[a] party's representation of a nonparty is 'adequate' for preclusion purposes only if, at a minimum: (1) the interests of the nonparty and h[is] representative are aligned, and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty."  Id. at 900 (emphasis supplied) (internal citations omitted).

Petitioner theorizes that Mrs. Vest was a fiduciary -- or "adequate representative," in the language of Taylor -- for Claimant because of the "derivative" nature of her spousal benefits claim.  Appellant's Br. 20.  To the contrary, however, Mrs. Vest survivor's claim is a distinct cause of action that she filed in her own name, on her own behalf, and for her own award of benefits.  See, e.g., Charles v. Director, OWCP, 1 F.3d 251, 254 (4th Cir. 1993) ("[A] survivor's benefit . . . is the

25

personal claim of the dependent spouse, child, or parent."). Indeed, Mrs. Vest was not even entitled to file such a claim prior to Claimant's death. See 30 U.S.C. § 901(a).

The interests of a miner and his survivor with respect to establishing the miner's pneumoconiosis are plainly aligned. But the record is devoid of any indication that Mrs. Vest "understood herself to be acting in a representative capacity" for her deceased spouse or that ALJ Tureck "took care to protect" Claimant's separate interests. Taylor, 553 U.S. at 900. Without something more, Petitioner is not entitled to hold a nonparty miner to the result reached in his widow's claim. We therefore agree with the BRB that Petitioner has failed to establish Claimant had a "full and fair" opportunity to litigate the pneumoconiosis issue in Mrs. Vest's case. Collins I, 468 F.3d at 217 (citation omitted).

### III.

For the foregoing reasons, we deny the petition for review.

PETITION DENIED